Reed, J.,
delivered the opinion of the court.
■ It appears that as early as 1872 Michael Bashor owned or had possessory titles, or claims, and the possession of the lands now owned by both parties litigant; also, that the Hoelme ditch was in existence and carrying water, and it appears to have been conceded that Bashor was the owner or had the right to one fourth of the water carried by the ditch for the use of his lands. In course of time, Bashor’s lands were divided and passed by conveyances, so that at the time of instituting this suit each of the parties were owners of a portion of it. Neither the date of the construction nor capacity of the ditch are given. It is not shown how Bashor became the owner of one fourth, or that he at any time had any evidence of title. It is only shown that he was the owner of the water, and that it was used by different tenants occupying different parcels of the land. The quantity of water separate parcels were entitled to were very indefinitely defined, if at all. West, for instance, it appears was using his place for sheep raising, and for a long time only used water for “ dipping sheep ” and stock purposes. When not so used, other parties used it upon other parts of the land. The farming upon other parts of the land seems to have been *217 some years confined to a few acres, other years more, and some years upon portions no farming whatever was done. This desultory and uncertain use of water continued for several years, and the land passed into the hands of the parties to this suit. It does not appear that Michael Bashor or any of the mesne conveyancers ever conveyed any water or water rights whatever. Such rights appear to have passed by common consent or understanding with the lands, and as the original right of Bashor to one fourth of the water is by the co-owners conceded, and that is all that both parties claim in the aggregate, no title is in question; the only question being how that one fourth should be divided between the two sets of landowners respectively.
In the decree it is said, after describing the land, the water decreed shall pass “ as an appurtenance to said land?’ and counsel upon the trial appear to have been in harmony with the court in regarding the water as appurtenant to the land. This view originated either in a misconception of the law or in the unfortunate use of a word, for want of a better. Webster defines appurtenance as “ that which belongs to something else ; an adjunct; an appendage; something annexed to another thing more worthy,” etc.
Blackstone defines “ appurtenance: ” — “ belonging ; pertaining ; incident, as a right of way appurtenant to land or buildings.”
Bouv. Law Dic.: — “ Things belonging to another thing as principal, and which pass as incident to the principal thing; ” and this definition is sustained by numerous legal decisions, both English and American. Technically, property tangible and corporeal, capable of sale, of transfer and of use in another place, cannot be regarded as appurtenant to land; it must be incorporeal, an easement, a servitude. In Coke Litt. 121, it is said, “ that nothing can be appurtenant unless the thing agrees in quality and nature to the thing whereunto it appertaineth; as a thing corporeal, properly, cannot be appurtenant to a thing corporeal, nor a thing incorporeal to a thing incorporeal,” and this legal fact is rec *218 ognized to the present day. According to the recent legal decisions, a party, who owns land and the right to use water from an irrigating ditch or canal, has two separate and distinct rights of property, either of which could pass by assignment or conveyance, regardless of the other. Hence, the right to the use of water for irrigation from an artificial canal for conveying it, cannot be regarded as appurtenant to the land, technically, nor at common law.
The physical condition of the country, the worthlessness of land without water, and the great value of the two taken together should go far in establishing, in all cases of this kind, joint ownership of the ditch, and its- construction for the sole purpose of applying the water owned by each, respectively, to the reclamation of his own land and ajiplying it to that purpose ; the necessity of the union of the two making them one estate and the water right an easement, appurtenant and inseparable. Many able lawyers have so regarded such conditions, and efforts have been made, unsuccessfully, to have the doctrine established by the courts. In Strickler v. Colo. Springs, 16 Colo. 61, the question of the relation of water to land under conditions above stated, was squarely presented and authoritatively decided. It is there said: — “ It logically follows that the right to the use of the water for irrigation is a right not so inseparately connected with the land that it may not be separated therefrom. * * * The authorities seem to concur in. the conclusion, that the priority to the use of water is a property right. To limit its transfer * * * would in many instances destroy much of its value. * * * What difference can it make to others whether the owner of the priority in this case uses it upon his own lands or sells it to others to be used upon other lands ? ” In that case it was held that water originally applied to specific lands for irrigation could be sold, taken out at a different point; could be carried in a different ditch in no way connected with the land, and could, by the purchaser, be applied to a different and distinct use, clearly recognizing two separate and distinct estates entirely disconnected, one in the land and the other in water.
*219 At the time of the trial of this case the decision had not been made, but it will readily be seen that it is utterly repugnant to the idea of water as “ appurtenant ” under any circumstances. But the decree in this case may be put upon another and the true ground, and affirmed.
The real and perhaps the only question tried was, the application of the water in question to the different parcels of land and the priority and quantity applied, respectively, to the different parcels of land by the original claimant before the estate was divided. Much of the testimony of each side was inconclusive and unsatisfactory — necessarily so from the great length of time since the application of the water, and depended entirely upon the memory of the witnesses.
By sec. 6, art. 16, of the Constitution, it is said: “ Priority of appropriation shall give the better right as between those using the water for the same purpose,” etc. This is evidently intended to apply to the respective rights of different parties claiming the same interest adversely. Where, as in this case, there is no adverse claimant and the assumed priority is predicated upon the prior application and distribution of the water by the owner of different parcels of the same estate, there is grave doubt if it has any application whatever, when a water right is declared not to be appurtenant but a separate and distinct property interest. Hence, we cannot regard priority in the distribution and use of water on different parcels of land by the common owner as conclusive or controlling.
But the controversy may be regarded as an attempt to equitably settle the respective rights of the parties, and as such, the prior application and use of the water upon the respective tracts was a proper subject of inquiry, as between the parties the right of each would seem more nearly a “ prescriptive ” right than any other, and the parties majr be supposed to have dealt with their common grantor on the basis of water distribution as it had previously existed at the time of the respective conveyances. Viewing it in this light, we cannot agree with counsel that the decree was contrary to *220 the law and the evidence, which are the principal errors assigned and relied upon. Although in some respects unsatisfactory, there was evidence sufficient to warrant the decree. Nor do we see that any principle of law was violated. It seems to have been simply a question of fact.
• It is ably contended that appellee failed to prove by proper testimony a title to the land. If proof of title was necessary, it does not seem to have been insisted upon at the trial and exceptions saved so as to make it available upon appeal. The water right, if legally appurtenant, and an incident to the land, could only be established by proof of title to the land to which it appertained, but, being as declared in the Strickier case, supra, a separate and distinct property right, no property in the land need have been shown, and the land, the extent, number of acres irrigated, etc., can only be regarded as data upon which an equitable division of the water could be based. It must be conceded that it was rather an unsatisfactory manner of ascertaining what each claimant purchased, but seems to have been the best, if not the only available, method of arriving at a conclusion.
The decree of the district court, in so far as it declares the respective rights of the parties to the water, will be affirmed, but the case will be remanded to enable the court to amend its decree, by confining it to declaring the share owned by each, and striking out that portion connecting it with the land as an appurtenance.

Affirmed in part, and remanded to have-decree amended.