[No. 4544.]

THE CITY OF TELLURIDE v. DAVIS.

**Water Rights—Joint Appropriators—Change of Place of Use and Diversion.**

Where two parties together filed their claim to a certain

amount of water and jointly constructed a ditch through which they conveyed the water from the ·place of diversion to the place of use, where the water was divided, one-half being used on the separate individual property of each of the two appropriators, they were not tenants in common in the water right, but each had a separate and several right to one-half of the water appropriated, and either one, or his grantee, has the right to change the place of use or point of diversion of his one-half of the water, provided such change does not damage or infringe the right of the other.

*Appeal from the District Court of San Miguel County:*

*Hon. Theron Stevens, Judge.*

Mr. L. C. Kinikin and Mr. Lyman I. Henry, for appellant.

Messrs. Hogg & Watson, for appellee.

Mr. Justice Goddard delivered the opinion of the court.

About July 1, 1887, one F. P. Brown, together with appellee, who was plaintiff below, and T. A. Davis, located, surveyed and filed their claim to the waters of Mill creek to the extent and amount of 13.25 cubic feet per second of time, and·constructed a ditch through which they conveyed the water so claimed from the point of diversion to the lower end of the Ohio Placer, the property of F. P. Brown, where one-half was turned onto said placer and the remainder onto the Kokomo Placer, the property of the appellee. The water so diverted has ever since been used for beneficial purposes on said placers, Brown claiming one-half, and the appellee, Davis, one-half thereof, he having become vested with the interest originally held by T. A. Davis.

During the year 1897 an action was commenced in the district court of San Miguel county by F. P. Brown, E. L. Davis and others against the city of

Telluride for the purpose of restraining the town from diverting the waters of Mill creek so appropriated as aforesaid, in which action a decree was entered in January, 1898, for the relief asked. In this decree the ditch above mentioned was designated as the Big Ditch, and was awarded priority number three for the use of F. P. Brown for irrigation purposes, 51 statute inches, and for the use of E. L. Davis, for like purposes, 51 statute inches. On the 13th day of April, A. D. 1901, Brown conveyed to appellant, among other rights, the 51 inches of the waters of Mill creek awarded him in priority number three. It is alleged that by virtue of such conveyance the appellant claims the right, and threatens, to divert the 51 inches of water aforesaid at a point above the point where the same is diverted by said ditch, and that, if permitted so to do, the plaintiff will be greatly damaged in his estate for the reason that he will be unable to secure sufficient water to irrigate his land.

The court below held that the appropriation made by Brown and Davis was a joint appropriation, and was owned and held by them as tenants in common, and that neither could, without the consent of the other, divide the water at any other point than where they have heretofore divided it, nor divert or take his water through a different headgate, and that his grantee, having acquired no greater rights than Brown had, could not do so, and entered a decree enjoining the appellant from diverting any portion of the water allotted to priority number three in any manner except as the interest derived by appellant has heretofore been diverted and used by its grantor Brown.

We think the court below erred in holding that the appropriation made by Brown and Davis invested them with a joint ownership of the water appro-

priated. While it is true that they acted together in making the appropriation and in constructing the ditch, it was their understanding that each was to be entitled to one-half of the water so appropriated, and such share was to be applied on the separate estate and land of each; and while there is a unity of possession in the water while it was being carried through the ditch, yet, when it reached the Ohio Placer, the property of Mr. Brown, such unity of possession ceased, and one-half of the water was diverted to his individual use, while the remaining one-half was continued on till it reached the Kokomo Placer, the separate and individual property of appellee. The water was not used, or to be used, upon any land jointly owned by them, but, as stated above, was to be used upon each one's separate and individual land.

In these circumstances the right to a unity of possession necessary to constitute a tenancy in common did not extend to the right of user, which is essential to the existence of such a tenancy in a water right.—*Norman v. Corbley* (Mont.), 79 Pac. 1059.

We think this conclusion is clearly sustained by the allegations of the complaint and the evidence introduced. After stating the location of the water right, plaintiff avers: "That said Brown, by virtue of said location, was entitled to an undivided one-half of the waters so claimed, and this plaintiff with his co-claimant was, and is, entitled to the remaining one-half thereof." The appellee, on his re-direct examination, was asked the following question: "You may state as to the amount of water that you understood you were to use through this ditch, or out of this creek by means of this ditch, and how much Mr. Brown was to use? A.—Mr. Brown was to have one-half and I was to have one-half." Mr. Brown testified as follows: "Q.—Was anything ever done for the

division of the water carried through that ditch between you people? A.—During the time I think Mr. Adams was on the place the question would be raised who was getting the most water, whether I was getting my share and they theirs. I had been irrigating and they also; and I put in a box down at the lower end of the Ohio Placer, I called it a dividing box, one-half of it was run through on the Kokomo and the other on the Ohio Placer.'' And again: ''Q.—You answered Mr. Hogg a few minutes ago that for some years this water was allowed to run without a division box; what years were those? Who was in possession of the Kokomo Placer during such time? A.—What I mean, by not a division, we would put anything, a stone or anything, in the box to divert a portion of it; we were supposed to each get half of it and the parties that were on the place would take more than half, they would take it all a great many times, and I put this box in to let it run equal. Q.—Then if this ditch, as your memory has now been refreshed, was begun and constructed in 1887, it was in 1888 then that Frank Adams went upon the Kokomo Placer, was it? A.—Well, that is my recollection. Q.—Did Mr. Davis, or anyone for him, ever protest against you dividing that water in that manner as you have stated by the division box, one-half to each? A.—No, sir.''.

Without noticing the evidence further in detail, we think that when considered in the light of the conduct of the parties, together with the fact of the intended and actual application of the water, the right thereto was not a joint, but a separate and several, right in each of the parties to a one-half of the water appropriated. In this view of the case, there can be no question of the right of either to change his place of use of the water or the point of its diversion, if such change does not damage or infringe the

right of the other, nor of the right of his grantee to avail itself of the same privilege. There is no evidence that tends to show wherein the contemplated change of the point of diversion by appellant would in any way damage the appellee.

In the absence of such showing, the appellee is not entitled to the relief awarded. The decree is therefore reversed, and the cause remanded.

*Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE BAILEY concur.