Snow v. Abalos, 18 N. M. 681.

[No. 1626, April 20, 1914.]

OSCAR C. SNOW, Appellant, v. FRANCISCO ABA-LOS et al., Appellees.

## SYLLABUS (BY THE COURT)

1. Chapter 1, S. L. 1895, "An act in regard to community ditches and acequias," was purely administrative, and while section 1 of said act makes community acequias corporations, "for the purpose of this act," the legislature did not confer upon the organization thus created the power to acquire or hold title to water rights. Such corporations have no powers not expressly or impliedly granted them by the act creating them.

P. 692

2. The history of community acequias considered.

P. 692

3. In New Mexico, the "Colorado Doctrine," as it is termed, of prior appropriation prevails. Such doctrine was established or founded by the custom of the people, and grew out of the conditions of the country and the necessities of the people. It was recognized by the courts of the Territory and became the settled law.

P. 693

4. An appropriator of water does not acquire a right to specific water flowing in the stream, but only the right to take therefrom a given quantity of water, for a specified purpose.

P. 693

5. The intention to apply water to beneficial use, the di-

version works, and the actual diversion of the water, all pre-
cede the actual application of the water to the use intended,
but it is the application óf the water, or the intent to apply,
followed with due diligence toward application, and últimate
application, which gives to the appropriator the continued
and continuous right to take the water.

P. 694

6. Under a community ditch, each water user, by applica-
tion of the water to a beneficial use, acquires a right to take
water from the public stream or source of supply, which right
is a several right, owned and possessed by the individual
user, notwithstanding the fact that the ditch through which
the water is carried to his land may have been constructed
by the joint labor and money of the individual appropriator,.
in conjunction with others similarly situated, and the act of
1895, supra, did not change the status of the individual con-
sumer.

P. 694

7. While a ditch, through which water is carried for the
irrigation of lands owned by the constructors in severalty is
owned and possessed by the parties as tenants in common,.
the water rights acquired by the parties are not attached to
the ditch, but are appurtenant to the lands irrigated, and are
owned by the parties in severalty.

P. 695.

8. While section 1, chap. 1, S. L. 1895, makes all commun-
ity acequias corporations, for the purpose of that act, such
law did not divest the individual water users of any rights of
property which he theretofore owned or possessed.

P. 698.

9. The right to divert and utilize water acquired by the
individual water user under a community acequia, being a
several right, such individual consumer is a proper and nec-
essary party in an action for the adjudication of water rights,
utilized through such community acequia.

P. 699.

Snow v. Abalos, 18 N. M. 681.

10. The fact that a water user may have entered into a contract, by which he agrees, at some future time, to convey his water right to another party, does not militate against his right to maintain an action for the adjudication of his right to the use of the water.

P. 701

ADDITIONAL SYLLABUS (BY PACIFIC REPORTER)

11. The "appropriation of water" consists in the taking or diversion of it from some natural stream, or other source of water supply, pursuant to law, with intent to apply it to some beneficial use, which intent is consummated within a reasonable time by the actual application of all of the water to the use designed, or to some other useful purpose.

P. 693

Appeal from the District Court of Dona Ana County; Edward L. Medler, District Judge; reversed with directions.

HOLT & SUTHERLAND, Las Cruces, N. M., for appellant.

On demurrer: None of the points raised or attempted to be raised by the demurrer can be reached, when considered in the light of the allegations of plaintiff's complaint, and can be raised only by answer. Authorities on the two theories as to the appropriation of water: Wiel on Water Rights in Western States, sec. 1338; Wheeler v. Northern Irr. Company, 10 Colo. 583; Wiel on Water Rights, sec. 398; Sowards v. Meagher, 108 Pac. 1113; Hagerman Irr. Co. v. McMurray, 113 Pac. 833; City of Pocatello v. Bass, 96 Pac. 120; Conley v. Dyer, 43 Colo. 22; Kinney on Irrigation & Water Rights, (2nd ed.) sec. 1573; Combs v. Farmers, etc., Co. 88 Pac. 396; Kinney, pp. 2853-4; Clark v. Smith, 13 Peter, 195; Howland v. Chellen, 110 U. S. 15; Ames Realty Co. v. Big Indian Mining Co., 146 Fed. 166; Kinney on Irr. & Water Rights,, secs. 1573-1577; 1475; Wyett v. Laramer, etc., Co., 18 Colo. 298; Albuquerque, etc., Co. v. Gutierrez, 10 N. M. 177, 188 U. S. 545; Farmers, etc., Co. v. Brumbach,

Snow v. Abalos, 18 N. M. 681.

81 Neb. 641; Farmers' Co-op. D. Co. v. Riverside Ir. Co., 94 Pac. 761; Kinney, sec. 1481; sec. 8, C. L. 1897; Candelario et al. v. Vallejos et al., 13 N. M. 147; Elmor v. Drainage Com., 135 Ill. 269; Rodgers v. Pitt et al., 129 Fed. 932; Farnham on Waters and Water Rights, sec. 668; Wiel, sec. 1345; Montezuma Co. v. Smithville Co., 218 U. S. 374; Whitehead v. Cavin, 55 Ore. 98; Huff v. Porter, 102 Pac. 728; Kinney, secs. 1544, 1545; Lytle Creek Water Co. v. Perdew, 4 Calif. 426; Wiel, secs. 1338, 1340.

Under statute of New Mexico suit for adjudication of water rights may be instituted by the Attorney General, if not begun by private parties. Sec. 20, ch. 49, L. 1907; sec. 23, ch. 49, L. 1907.

On Demurrer of Defendant F. J. D. Westell:

Hulsman v. Todd, 31 Pac. 39; Sisk v. Caswell, 112 Pac. 185; Farmers', etc., Co. v. Southworth, 21 Pac. 1028; Church v. Stillwell, 54 Pac. 295.

MARK B. THOMPSON, Las Cruces, N. M., for appellees, W. W. Cox and F. J. D. Westell.

Lux v. Hagin, 65 Calif. 329; Blacks Pomeroy on Water Rights, sec. 62; St. Anthony Fall Water Power Co. v. City of Minneapolis, 43 N. W. 56; Blacks Pomeroy Water Rights, sec. 63; Bladly v. Harkness, 26 Calif. 69; Lytle Creek Water Co. v. Perdew, 65 Calif. 447; McGillivray v. Evans, 27 Calif. 92.

YOUNG & YOUNG, Las Cruces, N. M., for appellee, The Las Cruces Community Ditch.

31 Cyc. 572; Turner v. Great Northern Ry. Co., 55 Am. St. R. 883; Vol. 3, A. & E. Pl. & Pr. 523; Carpenter v. Gookin, 21 Am. Dec. 556; Riddle v. Gage, 75 Am. Dec. 151; 3 Cyc. 325, and cases cited.

M. B. THOMPSON, for appellee; Supplemental Brief.

Sec. 21, C. L. 1887; sec. 13, C. L. 1897; sec. 36, C. L. 1897; sec. 14, C. L. 1897; 11 A. & E. Pleading & Practice; Bliss v. Rice, 17 Pick. 23; Webster v. Vanderventer, 6 Gray, 429; Stinson v. Fernall, 77 Me. 576; Nevada Ditch Co. v. Bennett, 30 Ore. 59; Hargrave v. Cook, 108 Cal. 72; Pomeroy on Code Remedy, sec. 808; Candelario v. Vallejos, 13 N. M. 147; Secs. 25, 26 and 27, C. L. 1897.

## STATEMENT OF THE CASE.

This action was instituted by appellant in the District. Court of Dona Ana County, for the purpose of securing an adjudication of the rights of all water users, taking water from the Rio Grande river below the Elephant Butte dam, in that portion of New Mexico embracing what is known as the "Rio Grande or Elephant Butte Irrigation Project." The purpose of the action is to secure a judicial determination of the priorities of all the existing rights to the use of water within said district, in advance of the completion of said dam by the United States government. Some 7,000 claimants, or alleged claimants, are made parties defendant. The complaint, briefly summarized, was as follows:

Alleged residence of plaintiff in Dona Ana County, and his ownership in fee simple of 966.95 acres of land, which was specifically described.

Paragraph 2 alleged that such lands could not be successfully cultivated without the application of water from sources other than from natural rainfall.

Paragraph 3 alleged that the Rio Grande river is a natural stream, flowing in such manner that such waters might be diverted and made to flow to and upon the lands of plaintiff.

Paragraph 4 alleged that: "In the year 1850 the then owners and occupants of the lands of plaintiff hereinabove described, they being the predecessors in interest of plaintiff, diverted, and caused to be diverted from said Rio Grande river, sufficient of its unappropriated waters to irrigate the aforesaid lands by making a reasonable use of such waters, and which quantity was requisite and necessary for the proper irrigation of such lands, to-wit., an

aggregate of 690 inches, miner's measurement, as defined by chapter 49 of the Acts of the Thirty-seventh Legislative Assembly of New Mexico, continuous flow, delivered on such lands. And thereupon and thereafter, by means of headgates, an irrigation ditch and other works constructed by such predecessors in interest of plaintiff and other owners of land in said County of Dona Ana similarly situated, who organized and composed and thereafter continuously maintained, operated, and utilized for the purposes afore-said, what was then, ever since has been, and now is, known as the 'Mesilla Community Ditch,' plaintiff's said predecessors in interest caused the waters, so appropriated and diverted as aforesaid, to flow and otherwise to be conducted to and upon the aforesaid lands of plaintiff, whereby said lands were irrigated and rendered productive of valuable crops; that plaintiff's said predecessors in interest thereafter continued so to divert and cause to be diverted, and to conduct and cause to be conducted, said quantity of water from said Rio Grande river, requisite and necessary for the proper irrigation of the hereinbefore described lands, and did continuously utilize said water in irrigating said lands, and thereby produce valuable crops thereon; that immediately therefrom and continuously thereafter, and claiming through said original owners, plaintiff and his mesne grantors from said original owners have, ever since said year 1850, continuously diverted, and caused to be diverted, from said Rio Grande river the aforesaid quantity of water, requisite and necessary for the proper irrigation of said lands, and have continuously conducted, and caused same to be conducted, to and upon said lands in the manner and by the means aforesaid, and there used the same for the irrigation and benefit of said lands ever since the said year 1850, by reason and by means whereof valuable crops have been and are being produced thereon.''

Paragraph 5 alleged adverse claims by defendants.

Paragraph 6 alleged, in substance, that the lands referred to are situated within the district, the irrigation of which is contemplated by means of the irrigation system commonly known and designated as the "Rio Grande Project," contract covering the construction of which has

heretofore been entered into between the United States and the Elephant Butte Water Users' Association.

In paragraph 7 plaintiff asked leave of the court to insert the names of, and to make additional parties defendant, any other persons, firms, or corporations subsequently discovered to the claimants of any right adverse to the aforesaid rights of plaintiff.

Plaintiff prayed that his right to divert the quantity of water mentioned might be established, and that the several defendants be barred and forever estopped from having or claiming any right or title in or to the use of such waters adverse to the plaintiff, and that the respective rights of the several parties defendant in and to the waters of said river might in like manner be ascertained, fixed, declared, and established. Plaintiff also asked for general relief.

Among the defendants are divers community ditches, one thereof being the Mesilla Community Ditch.

W. W. Cox, one of the individual defendants, interposed a demurrer upon the grounds: "(1) That there is a defect in the parties plaintiff, in that the complaint shows upon its face that plaintiff has not been, and is not now, nor have his predecessors in interest been, appropriating or diverting any waters from the Rio Grande river in any quantity whatever, but it appears on the face of the complaint that whatever right or interest in and to any diversion or appropriation of waters of the Rio Grande river the plaintiff may now have, or he or his predecessors in interest may have had, is by reason of and by virtue of certain appropriations and diversions of the waters of the said Rio Grande river made by the Mesilla Community Ditch. (2) That it appears on the face of the complaint that the Mesilla Community Ditch, being a corporation under and by virtue of the laws of the State of New Mexico, and being trustee for the plaintiff, is the real party in interest in any cause or action to determine and adjudicate any rights that plaintiff may have by reason of the beneficial use of any waters appropriated and diverted as alleged in the complaint. (3) That it appears on the face of the complaint that no cause or reason exists to maintain

the action; it not appearing that he has demanded of the said Mesilla Community Ditch that the action be commenced for the benefit of him, the said plaintiff, and others similarly situated."

F. J. D. Westell, another of the individual defendants, filed a demurrer upon the grounds: "(1) That the complaint does not show by what right plaintiff's alleged predecessors in interest diverted the waters of the Rio Grande river, nor that any such right to divert ever existed in favor of said alleged predecessors in interest, nor that plaintiff is now the bona fide holder or owner of any right, or has any right to the present use of any of the alleged diverted water, nor what amount of water was diverted from the Mesilla Community Ditch. (2) That there is a defect in parties plaintiff, in that the complaint shows upon its face that plaintiff's alleged right to divert waters of the Rio Grande river was transferred to the Mesilla Community Ditch, and that the complaint fails to show any right to divert any water from the irrigation system of said Mesilla Community Ditch, nor that plaintiff is now the owner or bona fide holder of any such right, and therefore is not the real party in interest."

The demurrers were sustained.

The Las Cruces Community Ditch filed a motion to make the complaint more definite and certain upon 17 specific points. The motion was sustained as to the first, second, fourth, sixth, seventh, eighth, twelfth, and fifteenth of such points, which were as follows:

"First. Whether the said Mesilla Community Ditch mentioned and referred to in paragraph 4 of the said complaint is a corporation authorized and existing under the laws of the State of New Mexico governing community acequias, or ditches, and if the said Mesilla Community Ditch is such a corporation, whether or not the plaintiff is a member of the same.

"Second. Whether the water claimed by the plaintiff for the irrigation of his said land was appropriated by the plaintiff or any predecessor or predecessors in interest of the plaintiff individually, or whether the appropriation made by the plaintiff or any predecessor or predecessors in

interest was as a member or members of the said Mesilla Community Ditch."

"Fourth. Whether the plaintiff is an independent and individual owner of any water right in the said Rio Grande river for the irrigation of his said lands, and, if not such an individual owner, under what rules, regulations, and conditions the plaintiff is entitled to use water appropriated by the said Mesilla Community Ditch for the irrigation of his said lands."

"Sixth. What is the nature and character of the Elephant Butte Water Users' Association of New Mexico mentioned in paragraph 6 of the said complaint?"

"Seventh. Whether or not the plaintiff is a member of the said Elephant Butte Water Users' Association of New Mexico, and, if such a member, whether the plaintiff has executed any contracts or agreement with the said Elephant Butte Water Users' Association of New Mexico, whereby the plaintiff has agreed to surrender the control and distribution of all the waters heretofore appropriated by him or his predecessors in interest from the said Rio Grande river to the said Elephant Butte Water Users' Association."

"Eighth. Whether the plaintiff and all of the defendants in this action, save and except the several community ditches made defendants herein, have entered into any agreement or agreements touching the surrender to the said Elephant Butte Water Users' Association of the waters from the Rio Grande river claimed by the defendants, and, if so, the nature, character, and purport of the said agreement."

"Twelfth. How and by what means the water from the Rio Grande river, heretofore used by the plaintiff, for the irrigation of his said lands, has been distributed to the plaintiff."

"Fifteenth. If the plaintiff is a member of the said Mesilla Community Acequia, what is the area of lands irrigated by the said Mesilla Acequia, and what proportion do the lands of the plaintiff bear to the total area of lands irrigated by the Mesilla Community Acequia?"

Plaintiff elected to stand upon the complaint, and de-

clined to plead further; thereupon judgment was rendered dismissing the case at plaintiff's costs as to the defendant named in the motion and as to the defendants who filed the respective demurrers. From the judgment thus rendered this appeal is prosecuted.

## OPINION OF THE COURT.

ROBERTS, C. J.—We will first consider the action of the District Court in sustaining the demurrers, as our conclusions upon the legal questions raised by the demurrers will necessarily determine many of the questions raised by the motion interposed by the Las Cruces Community Ditch.

The principal contention of the demurring defendants is that the suit at bar cannot be maintained by the plaintiff for the reason that he is not the real party at interest, but that he Mesilla Community Ditch is the real party in interest, because, it is claimed by the defendants, that the said Mesilla Community Ditch was the original appropriator of the waters, the right to the exclusive use of which is claimed by the plaintiff, and by virtue of the further fact that said community ditch is the trustee for plaintiff, and that plaintiff has failed to allege demand upon said community ditch to prosecute the action for the benefit of himself and others similarly situated. Appellant claims that none of the points raised by the demurrer can properly be reached, when considered in the light of plaintiff's complaint, and can be raised only by answer; nevertheless, in view of the importance of the litigation and the desirability of obtaining an early decision of the main questions involved, we are asked to consider the questions raised upon the merits, and will therefore treat all the points discussed as properly before us for determination, without further inquiry.

Sections 20 and 21, c. 49, S. L. 1907, provides for the adjudication of the rights to the use of the water of any stream system, by an appropriate action in any District Court which has jurisdiction to hear and determine the same.

In order to dispose of the questions raised by the demur-

rer it will be necessary to consider the history, nature, and character of community ditches, and the relations which exist between the consumer, or members of such community corporations, and the corporation. Also the nature and character of the right to the use of the water of the public streams of New Mexico. Briefly stated, the question is whether the appropriation of the water was made by the community acequia, or the individual consumer.

The community irrigating ditch or acequia is an institution peculiar to the native people living in that portion of the Southwest which was acquired by the United States from Mexico. It was a part of their system of agriculture and community life long before the American occupation. After the Territory of New Mexico was organized, the legislature, by the act of January 7, 1852 (Laws 1851-51, p. 276), provided for the government of community acequias, and doubtless incorporated into the written law of the Territory the customs theretofore governing such communities. Under the act in question, elections were to be called and held by justices of the peace of the various precincts of the Territory, at which all the owners or tenants of lands to be irrigated therefrom were permitted to vote for overseers of such ditches. It was made the duty of such overseers to superintend the repairs and excavations on such ditches, to apportion the persons or number of laborers to be furnished by the proprietors, to regulate them according to the quantity of land to be irrigated by each one from said ditch, to distribute and apportion the water in the proportion to which each was entitled, taking into consideration the nature of the seed, crops, and plants cultivated, and to conduct and carry on said distribution with justice and impartiality. Further provision was made as to the repair of ditches, the calling out of laborers, the punishment of overseers for neglect of duty and of all persons obstructing or interfering with the flow of water in a community acequia. Thereafter, at almost every session of the legislature, laws, either general or special, were enacted relative to such acequias, but no important change was made until 1895,

when, by section 1, chap. 1, S. L. 1895, the legislature pro-
vided that "All community ditches or acequias, now con-
structed or hereafter to be constructed in this Territory,
shall for the purposes of this act be considered as corpor·
ations or bodies corporate, with power to sue or to be sued
as such." The act in question was purely administrative.
It did not confer upon the organization, in its corpor-
ate capacity thus created, the power to acquire or hold
title to water rights. The words "for the purposes of
this act" are words of express limitation, and such corpora-
tions, so created, have and possess no powers not thereby,
either expressly or impliedly, granted them. This being
true, we are compelled to resort to a consideration of the
history, nature, and character of such associations, for the
purpose of determining the relation of the consumer to the
corporation, and the nature and character of the right to
the use of water which he acquired by virtue of his mem-
bership therein.

New Mexico being in the arid region, the early settle
ments were established along the banks of perennial rivers,
or in the mountain valleys where water from springs and
creeks was reasonably certain to be available for irrigation
at the needed times. As a protection against Indians, set·
tlements were made in communities, and the people buil::
their houses and established their towns and plazas clo3?
together, and cultivated the lands in small tracts adjacent
to the settlement. When a settlement was established,
the people by their joint effort would construct an irri-
gation ditch, sufficiently large to convey water to their
lands for the irrigation of crops. Each individual owned
and cultivated a specific tract of land, sufficient to provide
food for the needs of his family, and from the main ditch
laterals were run to the various tracts of land to be watered.
The distribution of the water and the repair of the ditch
was in charge of a mayordomo, or officer elected by the
water users under the ditch. This official would require the
water users to contribute labor toward the repair of the
ditch and its maintenance, and also distributed the water
to the various irrigators equitably, in proportion to the
land to be irrigated, as his necessities required. When a

landholder under a community acequia conveyed his real estate, his right to the use of water as a member of the community passed with the real estate.

In New Mexico, the "Colorado doctrine," as it is termed, of prior appropriation prevails. Established or founded by the custom of the people, it grew out of the condition of the country and the necessities of its citizens. The common law doctrine of riparian right was not suited to an arid region, and was never recognized by the people of this jurisdiction. When the question came before the courts for adjudication, (Albuquerque L. & I. Co. v. Gutierrez, 10 N. M. 197, 61 Pac. 357), the doctrine of prior appropriation was recognized by the courts and became the settled law of the Territory. The judicial declaration, however, did not make the law; it only recognized the law as it had been established and applied by the people, and as it had always existed from the first settlement of this portion of the country. This construction of the law by the courts has been consistently adhered to by the legislature of the Territory, as the various acts upon the subject will show.

The latest definition of the term "appropriation of water" under the Arid Region Doctrine of Appropriation by Kinney, in his work on Irrigation and Water Rights, (2nd ed.) section 707, is as follows: "The appropriation of water consists in the taking or diversion of it from some natural stream or other source of water supply, in accordance with law, with the intent to apply it to some beneficial use or purpose, and, consummated, within a reasonable time, by the actual application of all of the water to the use designed, or to some other useful purpose."

The water in the public stream belongs to the public. The appropriator does not acquire a right to specific water flowing in the stream, but only the right to take therefrom a given quantity of water, for a specified purpose. He acquires this right as above stated. Necessarily he must have some suitable ditch, or other device, to enable him to take the water from the stream. In other words, the water must be captured before it can be applied to a beneficial use. In order to apply the water, and thereby

invest the appropriator with a right to continue to take and use the same, he must have suitable appliances for conducting the water to the place of use, otherwise he would not be able to use the same.

The intention to apply to beneficial use, the diversion works, and the actual diversion of the water necessarily all precede the application of the water to the use intended, but it is the application of the water, or the intent to apply, followed with due diligence toward application and ultimate application, which gives to the appropriator the continued and continuous right to take the water. All the steps precedent to actual application are but preliminary to the same, and designed to consummate the actual application. Without such precedent steps no application could be made, but it is the application to a beneficial use which gives the continuing right to divert and utilize the water.

Applying these principles to a community acequia, and the question raised by the demurrers in this case become easy of solution. A number of people settle in a given community, each owning lands capable of being irrigated from a natural stream. A., for example, conceives the idea of irrigating his farm. He finds that his neighbors likewise desire to irrigate their lands. They agree to construct a common ditch to the source of supply. Each individual contributes his labor and money, and the ditch is constructed, capable of carrying a sufficient amount of water to irrigate the lands of all the parties. They appoint a mayordomo or superintendent, whose business it is to divert the waters from the stream into the irrigating ditch. This mayordomo is but the agent of the individual owners of the lands under the ditch, and when he turns the water in he is acting for them. The water flows down the ditch and A. takes therefrom the water to irrigate his farm. He has applied the water to a beneficial use, and by reason of such application he has acquired the right to continue to divert from the public waters a sufficient amount to irrigate his lands. The people under the community system, as stated, have no right to any specific water flowing in the river, but by the completed appropriation

each has the right to continue to divert therefrom water sufficient for the purpose for, which it is used.

The ditch, or carrier system, having been constructed by the joint labors of all the water users, is owned by them as tenants in common; each having a common interest in the same. While this is true, each has a several right to take water from the stream system for the irrigation of his lands. After the water, the right to divert which, as stated, is vested in the several parties, has been actually diverted under such several rights, into the ditch, and reduced to possession, and by such diversion becomes intermingled, such waters are probably owned by the parties as tenants in common. Under such community systems, the water commissioners or mayordomo had general charge of the ditch and distributing system; it was his duty to keep it in repair, assessing the labor upon the parties using the ditch. He diverted the water into the ditch, but only by virtue of rights acquired by individual users, by completed appropriations, or rights acquired to divert water. He distributed the waters equitably to the several users, in proportion to the lands irrigated, taking into consideration the nature of the crops and quantity required. No one is entitled to waste water. When his requirements have been satisfied, he no longer has a right to the use of water, but must permit others to use it.

Such being the case, we are of opinion, that prior to the enactment of the statute of 1895, supra, making such community acequias corporations, for certain purposes, each individual water user under a community acequia was the owner of a right to take water from the public stream or source from which it was drawn, which right was divorced from and independent of the right enjoyed by his co-consumer; that the fact that such water was diverted into a ditch, owned in common with other water users, did not give such other users any interest in, or control over, the right to take water, or water right, which each individual consumer possessed; that the right to divert water, or the water right, is appurtenant to specified lands, and inheres in the owner of the land; that the right is a several right, owned and exercised by the individual, and, the officers of

the community acequia, in diverting the water act only as the agents of the appropriator.

Section 44, c. 49, S. L. 1907, provides: "All water used in this Territory for irrigation purposes, except as otherwise provided in this act, shall be considered appurtenant to the land upon which it is used." This provision was, we believe, but a recognition of the law relative to waters used for irrigation, established by general custom. Where land is owned in severalty, to which a water right is appurtenant, which water right is of course only a right to take from the public stream a sufficient amount of water to properly irrigate the land, we fail to understand how such a right could be owned in common with other water users.

Appellees have cited us to section 62, Black's Pomeroy on Water Rights, where the author says: "Whenever ditches or other structures for diverting or appropriating water belong to two or more proprietors, such owners are, in the absence of special agreements to the contrary, tenants in common of the ditch, and of the water rights connected therewith, and their proprietary rights are governed by the rules of law regulating tenancy in common"—and also refer to the cases of St. Anthony Falls Water Power Co. v. City of Minneapolis, 41 Minn. 270, 43 N. W. 56; Bradley v. Harkness, 26 Cal. 69; Lytle Creek Water Co. v. Perdew, 65 Cal. 447, 4 Pac. 426. The learned author and the courts, we believe, erroneously consider the water rights attached to the ditch, which of course is owned by the parties constructing it as tenants in common, whereas said water rights are appurtenant to the lands owned in severalty by the parties. The ditch is simply the carrier, or agency employed by the parties, to conduct the water, the right to which is appurtenant to the land, to be irrigated. Suppose, for example, that two farmers each owned a farm; their lands being contiguous. In order to reach their lands they should jointly construct a wagon road to the same. The road would be owned by the parties jointly or as tenants in common. Each would have the right to use the road. The fact that they haul their produce raised on the farm over the wagon road thus con-

structed would not make them tenants in common of the crops so hauled. However, if they should, for instance. mix their grain together, for the purpose of hauling it to market, they would of course be tenants in common of the grain so commingled.

In the case of Norman v. Corbley, 32 Mont. 195, 79 Pac 1069, this principle is applied by the Supreme Court of Montana. The Court say: "To constitute a tenancy in common there must be a right to the unity of possession (17 Am. & Eng. Enc. L, [2nd ed.] 651, and cases), and if this right is destroyed, the tenancy no longer exists. With respect to a water right this unity must extend to the right of user, for the parties can have no title to the water itself."

In the case of City of Telluride v. Davis, 33 Colo. 355, 80 Pac. 1051, 108 Am. St. Rep. 101, the Colorado Supreme Court considered a similar question. There two parties constructed a ditch for the purpose of conveying water to mining claims, each owning a separate claim. The waters were carried through the ditch to the claims, where each party utilized one-half of the water. The trial court held that the appropriation made by the parties was a joint appropriation, and was owned and held by them as tenants in common and that neither could, without the consent of the other, divide the water at any other point than where they had theretofore divided it, nor divert or take his water through a different headgate. The Court say: "We think the court below erred in holding that the appropriation made by Brown and Davis invested them with a joint ownership of the water appropriated. While it is true that they acted together in making the appropriation and in constructing the ditch, it was their understanding that each was to be entitled to one-half of the water so appropriated, and such share was to be applied on the separate estate and land of each; and, while there was a unity of possession in the water while it was being carried through the ditch, yet, when it reached the Ohio placer, the property of Mr. Brown, such unity of possession ceased, and one-half of the water was diverted to his individual use, while the remaining one-half was continued on till it

reached the Kokomo placer, the separate and individual property of appellee. The water was not used, or to be used, upon any land jointly owned by them, but as stated above, was to be used upon each one's separate and individual land. In these circumstances, the right to a unity of possession necessary to constitute a tenancy in common did not extend to the right of user, which is essential to the existence of such a tenancy in a water right. Norman v. Corbley, 32 Mont. 195, 79 Pac. 1059."

Did the act of 1895 change the status, in this regard, of the right acquired by the individual to divert and utilize water from a public stream? This question was apparently fully answered by the Territorial Supreme Court, in the case of Candelario v. Vallejos, 13 N. M. 147, 81 Pac. 589, where it enunciated the doctrine that the organization of such an association in no manner involved the surrender of individual property rights. The Court say: "We are of opinion that under that system he remained as any other citizen vested with full rights of property, sacred against any alienation except by his consent or by due process of law. * * * * The corporation thus created * * * has only the powers expressly or by necessary implication granted to it by the act creating it and no more. It belongs to the class of corporations—citing Elmore v. Drainage Commissioners, 135 Ill. 269-273, 25 N. E. 1010, 25 Am. St. Rep. 363. * * * This was no voluntary organization; the owners of these lands and the water rights appurtenant thereto were not given leave to incorporate, as a preliminary to which they deeded their several holdings to the corporation. On the contrary, the legislature, for the purpose purely of more conveniently and economically distributing the water upon such lands, and thus perhaps of leaving by such economical use, an overplus for new appropriations, decided to make corporations out of each of the ditches. The legislature did not take away or diminish any property rights previously held by the several owners, nor could it do so. * * * As it could not by its fiat confiscate the property of its citizens, it could not by creating a corporation and officers thereof

confide to such corporation the power to confiscate property. * * * * "

The words, " 'that such officers shall have general charge of all affairs pertaining to the same,' * * * do not disturb property rights as they previously existed in the various co-partners; they do not disturb or destroy priorities as they existed before the statute of incorporations; they do not give the power to take away from one the water belonging to him and to give it to another."

The act in question was administrative only, and for convenience gave a legal status to such organizations, in order to facilitate the distribution of the water and the maintenance of the ditches and laterals. It did not attempt to interfere with the rights theretofore owned by the individual. It could not, had it so desired, have arbitrarily divested the individual of his right to divert and utilize water and invest the same in the corporation by it created. That it did not attempt to do so is plain.

If our conclusion is sound, and the right to divert and utilize water, acquired under a community ditch, is a several right, vested in the individual appropriator, it necessarily follows that the individual is a proper and necessary party in an action for the adjudication of water rights, where such rights are exercised through a community ditch. If it be true that the individual is the owner of the right to divert water, it would necessarily follow that he would only be bound by decree, in a suit, to which he was a party.

Appellees contend that the appellant necessarily would not have any priority of right over his co-water users under the Mesilla Community Ditch. Admitting for the purpose of argument only that this contention is sound, it does not militate against his right to maintain this action. He has the right to have all the priorities adjudicated and settled by a decree of the court, even though such rights would be held co-ordinate and equal with his own. It was the evident design of the legislature, by chapter 49, S. L. 1907, to have adjudicated and settled by judicial decree all water rights in the State, to have determined the amount of water to which each water user was entitled, so that the

·distribution of water could be facilitated, and the unap-
propriated water to be determined, in order that it might
'be utilized.

The only remaining ground of demurrer, not disposed of
by what has been above said, is ground No. 1 in the de
murrer interposed by F. J. D. Westell, viz.: "That the
·complaint does not show by what right plaintiffs alleged pre-
decessors in interest diverted the waters of the Rio Grande
river, nor that any such right to divert ever existed in
favor of said alleged predecessors in interest, nor that
plaintiff is now the bona fide holder or owner of any right,
·or has any right to the present use of any of the alleged
·diverted water, nor what amount of water was diverted
from the Mesilla Community Ditch." A reading of the
·complaint, and construing the law relative to such water
rights as above applied, will clearly demonstrate the lack
of merit in this ground of the demurrer. Our conclusion
is that the District Court erred in sustaining each of said
·demurrers.

We are also of the opinion that the motion to make the
·complaint more definite and certain, interposed by the Las
Cruces Community Ditch, should not have been sustained,
·as to the grounds set forth in the statement of facts.

The first ground of the motion, which was sustained by
the court, was that the plaintiff be required to allege
whether or not the Mesilla Community Ditch is a corpor-
·ation, and whether the plaintiff is a member of the same.
In view of our conclusion as to the nature and character
·of such corporations it is evident that such an allegation
is wholly unnecessary. However, the facts alleged in para·
·graph 4 of the complaint clearly show the organization and
·existence of an association such as was declared by the
·act of 1895 to be a corporation for certain specified pur·
poses, and the complaint further shows that the plaintiff i:
·a member of such association.

The second, fourth, twelfth, and fifteenth grounds of the
motion sustained by the court have been disposed of by
what we have said in discussing the demurrers, and further
·argument is unnecessary. These grounds of the motion
were predicated· upon the assumption that the Mesilla

Community Ditch was the proper party to institute the ac-
tion, and that a member of such a community corporation
could not maintain the action in his own name, and were·
designed to require plaintiff to allege facts in his complaint
more clearly establishing the fact that he acquired his
rights as a member of such a community association or
corporation. This, as we have seen, would not militate
against his right to maintain the action, and such allega-
tions would add nothing material to the complaint.

The sixth, seventh, and eighth grounds of the motion
were designed to require plaintiff to allege whether he had
entered into an agreement, to convey his water rights to·
the Elephant Butte Water Users' Association, and to re-
quire him to state the nature and character of such asso-
ciation. The fact that he had entered into an agree-
ment to, in the future, convey his rights to another
party would not preclude him from maintaing the suit.
He alleged in his complaint that he was the owner of the
right. Until the title to such right passed from him he·
would have the right to maintain the suit. We fail to per-·
ceive how it was in any way material to the cause of action
to allege the required facts. By sustaining the motion
upon these grounds the court required plaintiff to plead
facts which were foreign and not relevant to the cause of
action set forth in the complaint, and facts which, if they
existed, could properly be raised, if at all, only by answer.

For the reasons stated, the cause is reversed, with direc-
tions to the District Court to overrule the demurrer, and
the motion to make the complaint more definite and cer-·
tain; and it is so ordered.