925 P.2d 9

**KRM, INC., a New Mexico corporation, Plaintiff–Appellant,**

v.

**Herschel CAVINESS and Gary Caviness, Defendants–Appellees.**

**No. 17117.**

Court of Appeals of New Mexico.

Sept. 11, 1996.

Marion J. Craig III, Marion J. Craig III, P.C., Roswell, for Appellant.

Richard F. Rowley III, Rowley Law Firm, P.C., Clovis, for Appellees.

*OPINION*

BOSSON, Judge.

1. KRM sues the Cavinesses (Caviness) for declaratory judgment. Each of these two parties claims ownership of valuable rights to underground water for commercial use, and each claims to have purchased the same rights from the identical original owner, Williams. The district court determined that the water rights were appurtenant to the land which Caviness bought from Williams, and therefore held that the rights had passed to Caviness by operation of law. KRM disagrees, having subsequently purchased the water rights independent of the land from Williams' estate. We agree with KRM and hold that these water rights were not appurtenant to the land and did not pass to Caviness by operation of law. We remand for further proceedings.

BACKGROUND

2. Williams established the water rights in question by filing a declaration in 1963 as provided by law. *See* NMSA 1978, § 72–12–5 (Repl.1985) (providing for the declaration of beneficial use of a vested water right); *see also* NMSA 1978, § 72–12–18 (Repl.1985) (all underground waters in New Mexico are public waters subject to appropriation for beneficial use). The right is for 1920 acre feet of underground water for commercial use.

3. In November 1974, Williams entered into a real estate contract to sell his land to Caviness. The contract made no mention of water rights. Prior to 1974, Williams had sold water for commercial purposes (mining and drilling) from the water rights declared in 1963. After buying the land in November 1974, Caviness continued to sell water from the same source to the same commercial users. It is undisputed that use of that water on the land was very limited. At trial the parties stipulated that:

> Since November 12, 1974, the only water used on the property held by Caviness, pursuant to the Contract of Sale, was windmill water used for watering livestock, and water which was sold by the Caviness' to B.J. Wooley d/b/a/ Caprock Sand & Gravel.... In addition, Wooley and Caviness, in 1978 sold water for commercial purposes to Broce Construction Company.

Even more to the point, it is undisputed that the appropriated water at issue has never been used for irrigation purposes on the property Williams sold to Caviness. After Williams' death, his estate sold the disputed water rights to KRM.

4. The relevant statute relating to the transfer of water rights states:

> the transfer of title of land in any manner whatsoever shall carry with it *all rights to the use of water appurtenant thereto for irrigation purposes,* unless previously alienated in the manner provided by law.

NMSA 1978, § 72–5–22 (Repl.1985) (emphasis added). NMSA 1978, Section 72–1–2 (Repl.1985) provides that water used for irrigation purposes is appurtenant to the land where it is put to this beneficial use:

> *all waters appropriated for irrigation purposes,* except as otherwise provided by written contract between the owner of the land and the owner of any ditch, reservoir or other works for the storage or conveyance of water, *shall be appurtenant to specified lands owned by the person, firm or corporation having the right to use the water, so long as the water can be beneficially used thereon,* or until the severance of such right from the land in the manner hereinafter provided in this article.

(Emphasis added.) This case requires us to interpret these statutes in light of the purposes and policies behind the appropriation doctrine.

5. The doctrine governing water law in New Mexico and the western United States is the appropriation doctrine. *See generally* Norman K. Johnson & Charles T. DuMars, *A Survey of the Evolution of Western Water Law in Response to Changing Economic and Public Interest Demands,* 29 Nat.Resources J. 347 (1989) [hereinafter Johnson & DuMars]; Charles T. DuMars, *New Mexico Water Law: An Overview and Discussion of Current Issues,* 22 Nat.Resources J. 1045 (1982). The appropriation doctrine has several defining characteristics. One of these is "beneficial use" that requires appropriated water to be used for a beneficial purpose. Another is the need to divert water to areas of use. Johnson & DuMars, *supra,* at 350–51. A vested right to use water is a protected property right that can be sold, leased, or transferred. *Id.* at 351.

6. Under the appropriation doctrine, the right to use water is considered a property right which is separate and distinct from ownership of the land. *See* George A. Gould, *Transfer of Water Rights,* 29 Nat.Resources J. 457, 460 (1989) (water rights under the appropriation doctrine are based solely on beneficial use and arise independently of land ownership); *see also Murphy v. Kerr,* 296 F. 536, 541 (D.N.M.1923) (discussing the reasons for adopting the prior appropriation doctrine; quotes a treatise asserting generally that water rights as real property rights are independent of any ownership of land and independent of any use or mode of enjoyment), *aff'd,* 5 F.2d 908 (8th Cir.1925);

*Bloom v. West,* 3 Colo.App. 212, 32 P. 846, 848 (1893) ("[T]he right to the use of water for irrigation from an artificial canal for conveying it cannot be regarded as appurtenant to the land, technically, nor at common law.").

7. As indicated by the aforementioned statute, the theory of water as an independent property right is subject to a legislative exception for irrigation. The statutory exception for irrigation purposes is based on judicial recognition of the general custom in New Mexico relating to waters used for irrigation. *See Snow v. Abalos,* 18 N.M. 681, 696, 140 P. 1044, 1049 (1914) (commenting on the 1907 predecessor to Section 72–1–2). New Mexico case law would also support expanding the statutory exception to include water used on the land for domestic purposes, including watering livestock, or where the right to continue to use the water on the land is indispensable to the enjoyment of the land. *See First State Bank of Alamogordo v. McNew,* 33 N.M. 414, 430, 269 P. 56, 62–63 (1928).

▮ 8. In light of this history, and based on the plain language of the statutes, we conclude that Sections 72–1–2 and 72–5–22 evince an intent to create a limited statutory exception to the general rule that water rights and land ownership are distinct property rights. The statutory exception links ownership of the land with water rights only if the water is beneficially used on that land for irrigation purposes. *See* §§ 72–1–2 & 72–5–22; *see also Corea v. Higuera,* 153 Cal. 451, 95 P. 882, 884 (1908) (indicating that the California Code provided that a thing is appurtenant to land if it is by right used with the land for its benefit); *Little v. Greene & Weed Inv.,* 839 P.2d 791, 796 (Utah 1992) (interpreting Utah's statute relating to the conveyance of a water right appurtenant to land, such that "a vested water right is considered appurtenant to the land conveyed only to the extent that it is used to the land's benefit at the time of the conveyance"). This determination is not only dictated by the plain language of the statutes, but is consistent with the underpinnings of the appropriation doctrine that treat ownership of land and the right to use water as independent property rights and recognizes only limited exceptions where the use of the water is necessarily linked to the use or enjoyment of the land.

9. This determination is also consistent with Section 72–12–5, which provides that declarations of existing water rights shall set forth a description of the land upon which the water has been used for irrigation purposes. There is no provision to describe the land upon which the water has been used for other beneficial purposes, such as mining or oil well drilling. This distinction lends additional support to our understanding that the legislature only intended waters used on the land for irrigation purposes to be considered appurtenant to the land which would pass with title to the land by operation of law.

10. The parties dispute the applicability of certain language in *McCasland v. Miskell,* 119 N.M. 390, 393, 890 P.2d 1322, 1325 (Ct. App.1994), *cert. denied,* 119 N.M. 354, 890 P.2d 807 (1995), which states, in part, "A water right is appurtenant to the land of a landowner who has applied it to beneficial use." Because this language does not specifically limit the beneficial use to irrigation, Caviness argues that *McCasland* supports their position that any beneficial use is sufficient to render the water right appurtenant to the land. Unlike Caviness, however, *McCasland* involved appurtenant water rights that were used for irrigation. The only question was whether the owner had taken the proper legal steps to sever those rights from the land to which they were appurtenant. The opinion does not discuss whether uses other than irrigation could become appurtenant. In the present case, there is no issue of severance of water rights that are undisputedly appurtenant to the land. Our issue is whether the water rights established by the Williams 1963 declaration, which have never been used for irrigation, were appurtenant to the land. Because the water rights in *McCasland* were irrigation ditch rights and the water rights in this case have been used for mining and water flooding purposes, *McCasland* does not address the issue raised in this case.

11. We also note that the cases relied on in *McCasland* to support the general propo-

sition that water rights are appurtenant to land if the landowner has put the water to beneficial use actually indicate that this use must be for irrigation purposes on the land to which the water right is appurtenant. *See Murphy,* 296 F. at 541; *Middle Rio Grande Water Users Ass'n v. Middle Rio Grande Conservancy Dist.,* 57 N.M. 287, 299, 258 P.2d 391, 398 (1953). The opinion in *Middle Rio Grande Water Users Ass'n* concerned whether a reclamation contract was valid and cites the *Murphy* case for the propositions that water rights are appurtenant to the land and the Conservancy District did not have the right to barter away the vested rights of landowners who had put the water to beneficial use. 57 N.M. at 299, 258 P.2d at 398. The court in *Murphy* stated, "The usufructuary right or water right is appurtenant to the land *upon which it is applied to beneficial use.*" *Murphy,* 296 F. at 541 (citing *Snow,* 18 N.M. at 695, 140 P. at 1048–49) (emphasis added). The Court in *Snow* was concerned with the adjudication of water rights as part of the Elephant Butte Irrigation Project. The parts of the *Snow* opinion relied on in *Murphy* were concerned with the joint or individual nature of water rights on waters drawn from community acequias. The *Snow* opinion quoted the predecessor to Section 72–1–2, which is essentially the same as Section 72–1–2, and stated that water *used for irrigation purposes* " 'shall be considered appurtenant to the land upon which it is used.' " *Snow,* 18 N.M. at 696, 140 P. at 1049 (emphasis added). In short, this line of cases does not support the proposition asserted by Caviness that water put to any beneficial use is appurtenant to the land of a landowner who owns the water right.

■ 12. In the present case, the water has never been used for irrigation on the land Williams sold to Caviness. Nor are there any allegations that the continued commercial use of these water rights is indispensable to the continued enjoyment of the land sold to Caviness. Therefore, there is no authority to support the determination that the water rights established by the 1963 declaration were, or are, appurtenant to the land Williams sold to Caviness. We reverse the district court on this ground.

13. Our determination that the water rights did not pass to Caviness by operation of Sections 72–1–2 and 72–5–22 does not end the inquiry in this case. Because the district court determined that the water rights passed by operation of law, it did not need to make any findings concerning the contractual intent of the parties when the land was sold. That issue is now relevant, and the district court must initially decide the question. Because there is some evidence which might indicate that the parties intended the conveyance of the land to include these water rights, we remand this case for further proceedings. *See, e.g., Gonzales v. Public Employees Retirement Bd.,* 114 N.M. 420, 422, 427–28, 839 P.2d 630, 632, 637–38 (Ct.App.) (remanding for further consideration on second issue raised on appeal because determination of this issue would involve re-weighing and drawing inferences from the undisputed facts), *cert. denied,* 114 N.M. 227, 836 P.2d 1248 (1992). We express no opinion on whether the evidence is sufficient to persuade the district court that the parties either did or did not intend to convey these water rights as part of their conveyance.

14. The judgment is reversed and the matter is remanded to the district court for further proceedings.

15. IT IS SO ORDERED.

PICKARD and ARMIJO, JJ., concur.