[No. 4958.]

The Wadsworth Ditch Company et al. v. Brown.

1.  **Water Rights—Change of Point of Diversion—Statutory Construction—Res Judicata.**

    In a proceeding under c. 124, Sess. Laws 1903, to change the point of diversion of petitioner's right to use water from a natural stream of the state for irrigation, only his right to such change can be determined, and not the question of whether a former decree, in a proceeding establishing the relative priority of rights in which all the parties to this proceeding were parties, giving him the right to such water, was correct; such decree being res judicata on that point as to them; neither can the question of abandonment be therein litigated.—P. 61.

2.  **Water Rights—Statutory Construction—Change of Point of Diversion—Mutual Ditch Companies—Shareholders.**

    Sess. Laws 1903, c. 124, providing that every person, association or corporation desirous of changing in whole or in part the point or points of diversion of his or its rights to use water from any of the streams of the state, shall present a petition, etc., includes mutual ditch companies and shareholders who are consumers. The right to change is a property right; it was not

conferred by this remedial statute, but is a pre-existing right, and always could be enforced, so long as the rights of others are not thereby injuriously affected.—P. 61.

3.  **Appellate Practice—Findings—Evidence to Support—Not Disturbed on Appeal.**

Where there is evidence to support the findings of the trial court, they cannot be disturbed on appeal.—P. 63.

4.  **Water Rights — Mutual Ditch Companies — Stockholders — Change of Point of Diversion—Allowance with Restrictions.**

In a proceeding by a stockholder in a mutual ditch company to change his point of diversion from a natural stream, the decree provided that the proposed change should not be held in any manner to impair the relative rights of the stockholders; that the stock of the petitioner should still be liable to assessment for maintaining the ditch, the same as before; that the corporation should have the same power to enforce its assessments which it previously had; and that it should have the right to enforce its by-laws in all cases against petitioner, including the right to withdraw his appropriation of water through its headgates, when he had no immediate use for it. Held, that such decree was in compliance with c. 124, Sess. Laws 1903, which provides that, if it shall appear that the rights of others might be injuriously affected, the court shall decree the change upon terms and conditions which would prevent such injurious effect; and it amply preserves inviolate rights of the company and other stockholders as against petitioner.—P. 64.

5.  **Water Rights—Change of Point of Diversion—Persons Entitled to Maintain Proceedings.**

Where a person contracts to buy certain persons' stock in a mutual ditch company upon condition that he obtain a decree changing the point of diversion of the water represented by such stock, and the contract authorizes him to bring such proceeding, he comes within the provisions of c. 124, Sess. Laws 1903, providing that every person desirous of changing the point of diversion of his right to use water is entitled to maintain such proceeding.—P. 65.

6.  **Water Rights—Change of Point of Diversion—Notice—Where Published—Statutory Construction.**

Sess. Laws 1903, c. 124, requires that notice of a proceeding to change the point of diversion of water from a natural stream for irrigation be given by publication in one public newspaper "in such county into which such water district may extend," once each week for four successive weeks. Held, that "in such county" refers to the county in the court of which the proceed-

ing was properly instituted; that where a water district extends into two or more counties, a failure to publish in the county where the proceeding has been properly instituted invalidates such proceeding; and that the proper district court, under its power to make proper rules, might well order publication to be made in one public newspaper in each of such counties, and such course is advisable.—P. 66.

*Appeal from the District Court of the City and County of Denver.*

*Hon. Booth M. Malone, Judge.*

Action by H. R. Brown against The Wadsworth Ditch Company, The Rocky Mountain Water Company, The Agricultural Ditch Company, and The Golden, Ralston Creek and Church Ditch Company. From a decree for plaintiff, defendants appeal.

*Reversed and remanded.*

Mr. J. W. BARNES, Messrs. THOMAS & THOMAS, and Mr. THEODORE H. THOMAS, for appellants.

Mr. SAMUEL W. JOHNSON (Mr. GEORGE W. TAYLOR, of counsel), for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is a special proceeding under the statute (Session Laws 1903, p. 278), in which the petitioner applies to have changed the point of diversion of his right to use water from a natural stream of the state for irrigation. From a decree giving the relief asked, certain of the respondents have appealed.

The remedy provided by a similar act has been held to be exclusive.—*Irrigation Co. v. Water S. & S. Co.*, 29 Colo. 469. The statute substantially provides that any person desiring to make such change shall file a petition in the proper court, and give to all persons who may be affected thereby the same notice

which is now provided by law in statutory water adjudications. Upon proof that such notice has been duly given and served, the court is required to determine whether or not such change will injuriously affect the vested rights of others, and, if the finding is that it will not, a decree must be entered permitting the change; and if injury would result by allowing the change to be made absolutely, or without restrictions, nevertheless, if it can be made upon terms and conditions that necessarily will prevent or obviate the injury and protect the parties so affected, the court may decree the same upon such terms and conditions; otherwise, and if impossible to protect the parties injuriously affected, the application will be denied.

The petitioner owns, or claims to own, certain certificates of stock of The Wadsworth Ditch Company, a mutual ditch company organized for the purpose of furnishing water for irrigation to its own stockholders. No beneficial use can longer be made of the water to which the stock entitles petitioner upon any lands owned by him lying under the ditch. He therefore desires to divert the water at a point higher up the stream, and use his appropriation upon his lands lying under the canal of The Farmers' High Line Canal and Reservoir Company.

The appellants are not in accord in all respects in their objections to the decree, but we shall dispose of all of them without stopping, in every instance, to designate the respective contentions.

1. It appears that, under the appropriate statutory proceedings, a valid decree has been heretofore rendered, establishing the relative priority of rights to the use of water for irrigation in this particular water district. All of the parties here appeared in that proceeding, and their rights were there adjudicated. They all claim under the same decree, and are bound by its provisions.

It is said, by some of the appellants, that the petitioner has no rights under this decree, because the Wadsworth Ditch Company, through ownership of whose stock he bases them, was never entitled to the quantity of water which the decree gave, and that, after its rendition, a large part of the priority awarded thereto has been abandoned.

We are of opinion that if, under the evidence, there is any basis for these contentions, the statute under which the present proceeding is being conducted did not contemplate their determination. Merely the right of the petitioner to have such change made can be determined. Besides, the decree, under which all these parties claim, established that the Wadsworth ditch was entitled to a priority for a given amount of water, and that determination is *res judicata* as to them. Whether there has been an abandonment of the priority, or any portion thereof, after the decree was rendered, is, as we have just said, a matter to be settled in some other and appropriate proceeding. In thus disposing of this point, we must not be understood as intimating that it has any basis in the evidence. We express no opinion whatever concerning it.

2. It is objected that the statute was not intended to apply to mutual ditch companies. The statute says: "Every person, association or corporation desirous of changing, in whole or in part, the point or points of diversion of his or its right to use water from any of the streams of the state, shall present a petition," etc. This language is broad enough to include mutual ditch companies and shareholders who are consumers. We know of no reason why discrimination should be made against the right claimed when the one who asserts it is under a mutual ditch. The right to change is a property right. It was not conferred by this remedial statute. It is a

pre-existing right, and always could be enforced so long as the rights of others are not thereby injuriously affected, and belongs to the stockholder (consumer) in a mutual ditch company, as fully as to any other appropriator. In *Irrigating Co. v. Reservoir Co.*, 25 Colo. 144, was a recognition of the right of a stockholder in a mutual ditch company to change the place of use of water. The same principle applies to the change of the point of diversion. This court has already decided against appellants' contention on this branch of the case. *Hallett v. Carpenter*, 37 Colo. 30. See, also, *City of Telluride v. Davis*, 33 Colo. 355.

3. Of the appellants The Wadsworth Ditch Company is the senior appropriator. It is said by the junior appellant appropriators that if petitioner is permitted to make this change, their rights as subsequent appropriators will be injuriously affected. The contention is that inasmuch as some of the water which is now being diverted from the stream through the Wadsworth ditch, when not entirely consumed by its stockholders, as is the case at certain seasons of the year, passes from its tailgate back into the stream at a point therein above the headgates of the ditches of these junior appellants and may now be used by them; whereas, if petitioner is permitted to have that part of the Wadsworth priority to which his stock entitles him diverted at a point higher up the stream than the headgate of the Wadsworth ditch, such waste water will not be enjoyed by them to the same extent that it now is.

There is no proof that any valid appropriation of this waste water had ever been made by appellants; and the court must have found that the same quantity of waste water will reach the headgates of appellants' ditches after the contemplated change is made as would have flowed down to them if the

entire appropriation of the Wadsworth ditch was turned into its own headgate. There was evidence to support such findings of the trial court, and we cannot disturb them.

4. The Wadsworth Ditch Company is one of the appellants and complains of the decree (1) because the proposed change injuriously affects its corporate vested rights, (2) that no notice was given of this proceeding, as required by the statute, and (3) that the petitioner was not a proper party to maintain the action because he was not the owner of any stock in the Wadsworth ditch or of any water right thereunder.

There was a by-law of the Wadsworth company, and a general custom of its stockholders, that when one has no immediate use for his proportionate share of water, the other stockholders may use the same upon their land. The company therefore says that to permit petitioner to take out his share through some other ditch would be a violation of this by-law and custom, and thus disturb, or destroy, the rights of other stockholders, and relieve petitioner from his obligations to his company, both of which rights exist as the result of a contract implied from the relation of a stockholder.

Neither the by-law nor the custom has given the stockholders a vested right to compel one stockholder to cease his use of water. Only when one stockholder does not need water can other stockholders use his share. We know of no principle of law which works a forfeiture of the water rights of one stockholder, or transfers the same to the other stockholders, of a mutual ditch company, when such non-using owner no longer has lands under the ditch upon which he can spread the water, or which prevents him from making a change in the point of diversion so that he may utilize his right; provided,

of course, such withdrawal imposes no additional burden on the company or the other stockholders.

It may be true that the vested rights which the stockholders in a mutual ditch company acquire by becoming members thereof cannot be disturbed or injuriously affected by one stockholder without the consent of the others. The court below found that the contractual relations between these stockholders would be disturbed if the petitioner was permitted, without restrictions, to make the change. It further found that in the decree provision could be made by which such corporate obligations could be fulfilled and the other stockholders protected. The court found that the only particular in which the company or other stockholders could be injured was that the expense of maintaining the ditch would not be decreased by the proposed change, which, we take it, means that the expense of maintaining the ditch would be as great after, as before, the change. The decree therefore expressly provided that the proposed change should not be held in any manner to impair or affect the relative rights of the stockholders of the Wadsworth company as between themselves, and that the shares of capital stock of the petitioner should still be liable to assessment for maintaining the ditch the same as if the proposed change were not made. It further reserved to the corporation the same control to enforce its assessments which it always had exercised, and expressly saved to it the right to enforce its by-laws in all cases against the petitioner, the same as it always had done, including the right to withdraw the amount of petitioner's appropriation through its own headgate when he had no immediate use for it. Whether petitioner could complain of these conditions is not mooted. He accepts them. They are in compliance with the statute which says that, if it shall appear

from the evidence that the rights of others might be injuriously affected, the court shall decree the change upon terms and conditions which would prevent such injurious effect, and they amply preserve inviolate every right of the company and other stockholders as against petitioner.—*Hallett v. Carpenter, supra.*

5.   Another objection is that the plaintiff is not the owner of the stock and water rights in question. It appears that petitioner made a contract with persons in whose name on the books of the company the stock stood, whereby he agreed to pay them a certain amount of money for a transfer of the certificates of stock and a deed to the water rights represented thereby whenever, and upon condition that, he obtained a decree, which he has endeavored to do in this proceeding, permitting a change in the point of diversion to be made.   Appellants say that petitioner therefore is not the owner of the stock and the water rights in the sense contemplated by the statute, since only record owners are within its purview.

It would seem from the contract, which is set out in full in the petition, that, as between the vendor and vendee, the petitioner, as vendee, is not the legal owner of the right to use this water.   The contract, however, which evidences his rights, expressly authorizes him to bring this very proceeding and contemplates that it shall be brought.   Indeed, it requires him to institute this proceeding.   We are of opinion, therefore, that, as between petitioner and appellants, he has brought himself within the statute which says: "Every person * * * desirous of changing * * * the point or points of diversion of his * * * right to use water," and is therefore entitled to maintain this proceeding.

6.   Another contention is that the notice of the time for hearing the petition prescribed by the statute was not given.   The notice required by the act in

this proceeding is the same as that which exists by law for original statutory water adjudications under the acts of 1879 and 1881. Section 6 of the act of 1881 (Session Laws 1881, p. 147), says: "Notice shall be given by the clerk of said court, of the time so appointed, by publishing the same in one public newspaper in such county into which such water district may extend; which notice shall be so published in such paper once in each week until four successive weekly publications shall have been made." The appellants say that the spirit of this section requires the notice to be published in one newspaper in each county comprising the water district.

This particular water district extends into three counties, Adams, Jefferson and Denver, formerly part of Arapahoe. It appears that the notice was published only in one newspaper, viz., a paper published in Golden in the county of Jefferson. The requirement that notice shall be published in a public newspaper "in such county" evidently refers to the county in which is held the court that has jurisdiction to adjudicate, the one in which the proceeding was properly instituted. For by section 19 of the act of 1879 (Session Laws 1879, p. 99), to which the 1881 act is supplementary, jurisdiction is "vested exclusively in the district court of the proper county," but when any water district extends into two or more counties, "The district court of the county in which the first regular term after the first day of December in each year shall soonest occur," shall be the proper court in which the proceedings shall be commenced. Denver county is now part of this water district; and in the district court of former Arapahoe county the original statutory proceeding should have been, and was, brought, and in the district court of Denver county the present proceeding was properly begun. The statutory notice in the

pending proceeding, which section 6 requires the clerk of the court to give, should, therefore, have been published in some public newspaper published in the county of Denver. This was not done, but, instead, the notice was published in a newspaper of Jefferson county. While there is language in section 7 of the act of 1881 which might be taken to indicate that publication of this or other notices should be made in more than one newspaper, there is other language which contemplates publication of this notice in but one. Construing these various sections as to publication of notice together, they are complied with when publication for the required time is made in one public newspaper published in that one of two or more counties, comprising a water district, in which the statutory proceeding was properly commenced. The court, however, under its power to make proper rules, might well order publication to be made in one public newspaper in each of the counties constituting the district, and such course is advisable.

There is nothing in *Farmers' Union Ditch Co. v. Rio Grande Canal Co.*, 37 Colo. 512, opposed to this conclusion. The precise point there ruled was that assuming, as counsel contended, that publication was required to be made in a newspaper published in each of the counties composing the water district, and posting of notice was also required, the recitals of the record that due and legal notice was given in all respects according to the statute were not negatived by the mere absence from the record of proofs of such notice, nor did such absence affirmatively establish that jurisdiction was lacking because the required notice was not given.

Were this an ordinary civil action, the objection we are now considering would not be available to the appellants, because they personally appeared at the

hearing and participated therein; but this decree cannot stand because the state is interested in this proceeding, and we have already held that it is the duty of the court to see that all persons who might be affected by the change should be made parties, and this necessarily contemplates that all the statutory directions as to notice must be complied with.— *Irrigation Co. v. Water S. & S. Co., supra.*

For the failure to publish the notice prescribed by the statute, the decree is reversed and the cause remanded for further proceedings in harmony with the views herein expressed. The evidence taken by the respective parties at the former, may be used at another, hearing, if any be had, and the same shall be considered by the court in determining their rights and the rights of all others already duly served with personal notice, or who appeared, or participated, in the former hearing. Other parties, if any, shall be at liberty to make their own showing upon the issue of the proposed change with leave to all parties concerned to meet that showing.          *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.