The GREAT WESTERN SUGAR COMPANY, Plaintiff-Appellant and Cross-Appellee,

v.

JACKSON LAKE RESERVOIR & IRRIGATION COMPANY and Fort Morgan Reservoir & Irrigation Company, Defendants-Appellees and Cross-Appellants.

FORT MORGAN RESERVOIR & IRRIGATION COMPANY, Plaintiff-Appellee and Cross-Appellant,

v.

The GREAT WESTERN SUGAR COMPANY, Defendant-Appellant and Cross-Appellee.

No. 82SA506.

Supreme Court of Colorado, En Banc.

April 23, 1984.

---

Moses, Wittemyer, Harrison & Woodruff, P.C., David M. Brown, Boulder, for The Great Western Sugar Co.

Epperson, McClary & Zorn, Donald F. McClary, Fort Morgan, for Jackson Lake Reservoir & Irrigation Co. and Fort Morgan Reservoir & Irrigation Co.

KIRSHBAUM, Justice.

Appellant and cross-appellee, Great Western Sugar Company (Great Western), as well as appellees and cross-appellants, Fort Morgan Reservoir and Irrigation Company (Fort Morgan Company) and Jackson Lake Reservoir and Irrigation Company (Jackson Lake Company), challenge an order entered by the district court for water division No. 1 in two consolidated cases involving disputes over the ownership and use of water storage rights in the Jackson Lake Reservoir. We affirm in part, reverse in part and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Great Western is a Colorado corporation engaged in the processing and refining of sugar beets. In connection with its commercial activity, it owns several factories located in or near various Colorado cities. Five of those facilities are located at Fort Morgan, Sterling, Loveland, Greeley, and Ovid, Colorado.

Great Western has acquired numerous water rights of various types to operate these facilities. Among such water rights are eighty-three shares of the 2,389 outstanding shares of stock in Fort Morgan Company, a mutual ditch company. Since 1882, Fort Morgan Company has owned direct flow rights, for irrigation purposes, to 323 cubic feet per second of water from the South Platte River. Fort Morgan Company also owns 1,025 of the 1,550 outstanding shares of stock in Jackson Lake Company, a mutual reservoir company which owns the water storage rights in the Jackson Lake Reservoir.

Fort Morgan Company provides water to its shareholders by means of the Fort Morgan Ditch, which it owns. The flow of water from the South Platte River diverted through the ditch must be maintained at a rate of no less than two hundred cubic feet per second to ensure that the water will reach downstream shareholders. Historically, the irrigation season generally has ended in late August of each year.

Because of limitations of available supply, Fort Morgan Company's direct flow rights have frequently proved inadequate to maintain the requisite minimum flow of two hundred cubic feet per second, even when such rights are in priority. When this problem develops—usually no earlier than late June or early July of a particular irrigation season—Fort Morgan Company

calls on its Jackson Lake water rights to supplement its direct flow rights in the South Platte River. On these occasions Fort Morgan Company shareholders in effect use Jackson Lake storage water as well as South Platte River direct flow water.

During past irrigation seasons, Jackson Lake storage water has been released to supplement Fort Morgan Company's direct flow rights as early as May and as late as September. However, except on one occasion, Jackson Lake storage water has never been released to supplement Fort Morgan Company direct flow rights after October 1. That one occasion occurred in 1969, when Great Western requested permission from Fort Morgan Company to use Jackson Lake storage water to "start up" the Fort Morgan sugar factory. As an accommodation, Fort Morgan Company agreed to Great Western's request. Except for this one event, Great Western has utilized only direct flow water from the South Platte River insofar as it relied upon its Fort Morgan Company stock shares to operate the Fort Morgan sugar factory.

On May 31, 1974, Great Western filed an application for a plan for augmentation of water rights in the water court for water division No. 1, pursuant to section 37–92–302(1)(a), C.R.S.1973.[1] The application, as amended, requested augmentation of Great Western's water rights with respect to facilities in Greeley, Loveland, Sterling, Fort Morgan, Ovid, and other cities.[2]

On March 17, 1978, the water court issued a decree approving Great Western's augmentation plan, as amended, with regard to its Greeley, Loveland, Sterling and Fort Morgan facilities. On June 29, 1978, the water court issued a decree approving Great Western's augmentation plan, as amended, with regard to its Ovid plant. Both decrees contain findings of fact to the effect that Great Western owns eighty-three of 2,839 outstanding shares of stock of Fort Morgan Company, and that Fort Morgan Company owns 1,025 of 1,550 outstanding shares of stock of Jackson Lake Company. Each decree authorizes Great Western to release "its" Jackson Lake storage water to satisfy any obligations of compensation to the South Platte River system resulting from implementation of the court's augmentation decrees.

Neither Jackson Lake Company nor Fort Morgan Company participated in the proceedings respecting Great Western's request for approval of augmentation plans. However, subsequent to the entry of the augmentation decrees, both companies intervened in the augmentation proceeding and requested that the decrees be set aside or amended to delete any suggestion that Great Western was the owner of any rights to water stored in Jackson Lake Reservoir. In August 1979, Fort Morgan Company, Jackson Lake Company and Great Western executed a stipulation providing in part that the companies would withdraw with prejudice their motions to amend the augmentation decrees. The stipulation stated that such decrees did not adjudicate or determine Great Western's "ownership or control of any rights to water stored in Jackson Lake" based upon Great Western's ownership of Fort Morgan Company stock, and further provided that Great Western would not implement the augmentation plans contained in those two decrees

> "with respect to Jackson Lake water until such time as either party hereto shall institute a separate proceeding in this court ... to determine the issues of ownership and control over water stored in

1. A plan for augmentation is defined as a program "to increase the supply of water available for beneficial use." § 37–92–103(9), C.R.S.1973 (1983 Cum.Supp.).

2. The original application involved proposed augmentation plans for operation of facilities at Brighton, Longmont, Loveland, Eaton, Greeley, and Johnstown, as well as the Sterling, Fort Morgan, and Ovid plants. Prior to hearing on the petition, Great Western withdrew its augmentation claims for several of these facilities; augmentation plans for operation of facilities other than Greeley, Loveland, Fort Morgan, Sterling, and Ovid do not depend on any claim of Great Western to Jackson Lake water, and, therefore, will not be discussed in the course of this opinion.

Jackson Lake, as part of [Great Western's] Decreed Plan for Augmentation." The water court approved and adopted this stipulation on August 30, 1979.

Sometime prior to September 28, 1979, Great Western, pursuant to its augmentation decrees, requested Jackson Lake Company to release water from Jackson Lake Reservoir. The request was opposed by Fort Morgan Company, and Jackson Lake Company refused to release the water.[3] Great Western then initiated a civil action for declaratory and injunctive relief in the water court for water division No. 1, seeking a declaration that because of its ownership of stock in Fort Morgan Company it had the right to use a portion of the water stored in Jackson Lake.

Jackson Lake Company and Fort Morgan Company answered and filed counterclaims seeking forfeiture of Great Western's stock in Fort Morgan Company. Subsequently, Fort Morgan Company commenced a separate action in Morgan County District Court naming Great Western as defendant and seeking forfeiture of Great Western's ownership of Fort Morgan Company stock. The complaint also requested injunctive relief and asserted a claim for damages. Both actions were consolidated for trial in the water court for water division No. 1.

With regard to Great Western's claim to a direct share of water stored in Jackson Lake, the water court found that Fort Morgan Company used Jackson Lake water principally to supplement its direct flow rights in the South Platte River and that even when these direct flow rights are in priority the canal may not contain sufficient water to supply downstream shareholders. Without specifically deciding what rights in Jackson Lake water Great Western might possess,[4] the water court concluded that the terms of the 1978 augmentation plans, insofar as they authorized use of Jackson Lake water by Great Western for compensation purposes, were not sufficient to prevent injury to other Fort Morgan Company shareholders. The water court also ruled that Great Western had not forfeited its stock interest in Fort Morgan Company by attempting to use Jackson Lake water pursuant to the terms of its plans for augmentation. Moreover, the water court made the following observation:

"This is not to say that Great Western cannot use the water represented by its shares in the [Fort Morgan Company] in its plan for augmentation; however, if it desires to do so it must institute a proper proceeding for change of water right upon terms and conditions which will prevent injury to other appropriators."

In its order denying post-trial motions, the water court made the following pertinent comment:

"The court views the actions of Great Western as a change of water right. It is recommended that Great Western reopen its augmentation plan or proceed under special statutory proceedings to

---

**3.** Three of the five directors of Jackson Lake Company are also directors of Fort Morgan Company.

**4.** The water court's opinion contains the following pertinent statements with regard to Great Western's claim to rights in Jackson Lake water:

"Great Western is the owner of 83 shares in the [Fort Morgan Company]. That company has a total of 2,839 shares outstanding. Thus the interest of Great Western amounts to slightly less than 3% of the total outstanding stock of the Fort Morgan company. It is the contention of Great Western that this stock ownership in the Fort Morgan Company makes it essentially the owner of a like portion of the water rights represented by the shares owned by the [Fort Morgan Company]

in the Jackson Lake company. Thus Great Western contends that it has the same rights as if it owned approximately 30 shares of the stock of the Jackson Lake company and is therefore entitled to command approximately 2% of the water stored in the Jackson Lake Reservoir.

. . . .

"To grant the contentions of Great Western would place it within the power of a shareholder in any of such companies to partially dismantle the system at will. . . .

"Great Western appears to concede that the exercise of such right, *if it exists,* would be contingent upon a showing of lack of injury to other appropriators." (emphasis added)

change the water right to use this water in a plan for augmentation."

All three parties have appealed the water court's order.[5] Fort Morgan Company and Jackson Lake Company contend that the water court erred in failing to find that Great Western forfeited its rights to sixty-eight shares of Fort Morgan Company stock by seeking to use such stock ownership to obtain water for uses other than the needs of the Fort Morgan sugar factory. Great Western argues that the water court erred in concluding that Great Western's ownership of Fort Morgan Company stock does not give Great Western the unrestricted right to use Jackson Lake storage water in connection with its plans for augmentation.

## II. GREAT WESTERN'S SHAREHOLDER STATUS

We first consider whether Great Western forfeited all its rights to sixty-eight shares of Fort Morgan Company stock. The resolution of this issue requires familiarity with certain additional historical events that distinguish the relationships of these parties.

Fort Morgan Company obtained its decree for direct flow water rights in the South Platte River in October 1882. On July 1, 1905, Fort Morgan Company issued Certificate No. 618, representing sixty-eight shares of its capital stock, to Fort Morgan Improvement Association. Certificate 618 contains the following language:

"It is further certified herein and agreed by the purchaser of this certificate and stock and its assigns, that the water in said Company's canal represented hereby is to be used hereunder in connection with the operation of a factory for the manufacturing of sugar out of Sugar Beets only, at or within the immediate vicinity of Fort Morgan Morgan

County Colorado, and that such stock is to be used by said association or its assigns only during and so long as said waters represented hereby are used for such purposes and none other, and is to be subject to cancellation when the waters represented hereby are not used for such purposes as aforesaid, and said factory ceases to be operated or maintained and that this restriction and right of cancellation shall be inserted in any other certificate or certificates of stock issued in lieu hereof upon assignment or otherwise of same, and all other assignments or transfers for any certificate issued hereon and so on in perpetuity."

On that same date, certificate 618 was cancelled and Certificate No. 619, also representing sixty-eight shares of Fort Morgan Company stock, was issued to Morgan County Construction Company (Morgan Construction). Certificate 619 contains the following provision:

"It is further certified herein and agreed by the purchaser of this certificate of stock its successors and assigns that they are entitled to use the water represented by said stock at all times and for such purposes as they may desire so long as a sugar factory to be constructed by said company shall remain and be operated at Fort Morgan, Colorado, and this restriction and limitation of title shall be inserted in any stock hereinafter issued in lieu hereof and so on in perpetuity."[6]

On December 20, 1905, Fort Morgan Company and Morgan Construction executed an agreement which provided in part that Morgan Construction would build a sugar factory at Fort Morgan. The agreement also contained a grant by Fort Morgan Company to Morgan Construction, its successors and assigns, of "the perpetual power, right and easement to conduct con-

---

5. This court has direct appellate review jurisdiction of water court adjudications. *See* Colo. Const. art. VI, § 2(2), § 13–4–102(1)(d), C.R.S. 1973, *and* C.A.R. 1(a)(2).

6. At trial, several exhibits were introduced to establish the precise language contained in

stock certificate 619 which was issued to Morgan Construction. The water court apparently resolved these factual disputes by finding that the pertinent language of the actual certificate 619 is the language here quoted.

tinuously all the water represented by" stock certificate 619. This agreement was recorded on the books and records of Morgan County.

Certificate 619 was cancelled by the issuance to Great Western of Certificate No. 806, representing the sixty-eight shares of Fort Morgan Company stock which had been obtained by Morgan Construction some two and one-half years earlier. Certificate 806, in language almost identical to the broad provisions of cancelled certificate 619, provides that Great Western, its successors and assigns "are entitled to use the water represented by said stock at all times and for such purposes as it or they may desire so long as a sugar factory heretofore constructed ... shall remain ... at Fort Morgan, Colorado...." Certificate 806 incorporates expressly the restrictions and limitations contained in certificate 619. Great Western later acquired fifteen additional shares of Fort Morgan Company stock which do not contain any provisions restricting the use of the water rights represented by such shares.

 Fort Morgan Company and Jackson Lake Company base their claim of forfeiture on the contention that Great Western violated the provisions of applicable stock certificates when it attempted to use the water rights represented by certificate 806 for facilities not located at Fort Morgan, Colorado. The water court in essence determined that the less restrictive provisions of certificates 619 and 806 superseded the more restrictive terms contained in certificate 618. The record supports this basic finding, *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979), and we agree with the water court's conclusions. The language of certificate 806 is not ambiguous. It grants Great Western broad rights to use the water represented by these sixty-eight shares of stock for any purpose so long as it operates a sugar factory at Fort Morgan. It is undisputed that Great Western is operating a sugar factory at Fort Morgan. Thus, Great Western has not violated the terms of certificate 806 by seeking to use the water rights represented by that certif-

icate for purposes other than the operation of its Fort Morgan factory.

## III. GREAT WESTERN'S INTEREST IN JACKSON LAKE WATER

 Absent some express exception, a shareholder of stock in a mutual ditch company is entitled to a ratable portion of the water obtained by exercise of the company's water rights. *Jacobucci v. District Court*, 189 Colo. 380, 541 P.2d 667 (1975); *Kendrick v. Twin Lakes Reservoir Co.*, 58 Colo. 281, 144 P. 884 (1914); *Rocky Ford Canal, Reservoir, Land, Loan & Trust Co. v. Simpson*, 5 Colo.App. 30, 36 P. 638 (1894). Fort Morgan Company owns 1,025 shares of stock in the Jackson Lake Company. Therefore, without an express condition to the contrary, by contract or otherwise, Great Western is the beneficial owner of a ratable portion of Jackson Lake water, based upon Fort Morgan Company's ownership of stock in Jackson Lake Company.

Great Western's ownership rights are defined in part by the terms of Fort Morgan Company's articles of incorporation, bylaws, and corporate resolutions, as well as by the terms of any applicable stock certificate. *Jacobucci v. District Court, supra.* Fort Morgan Company's articles of incorporation and bylaws contain no language which can be construed as restricting Great Western's use of its water rights. To the contrary, the articles of incorporation, dated April 11, 1905, recite the following "purpose" of the corporation:

"To build and construct other ditches for the purpose of carrying water for irrigation and other beneficial uses, and *to acquire, build and construct reservoirs; and to use and operate same; to acquire other canals and water rights*, and to use and operate such canals, water works and reservoirs, and to dispose of the rights of carriage, storage, delivery and distribution of water *for irrigation and other beneficial uses* therefrom and thereby; to sell and dispose of water rights, rights of carriage and storage rights for said purposes according to law, and to levy assessments for the

operation and maintenance of the same." (emphasis added)

Furthermore, article V of Fort Morgan Company's bylaws provides in pertinent part that "[t]he water superintendent shall divide the water from the canal *pro rata* to all shares issued and entitled to be issued...." When it purchased shares of stock in Jackson Lake Company, Fort Morgan Company acted on behalf of all of its shareholders, including Great Western. These shareholders are entitled to *pro rata* shares of Jackson Lake water, based on their ownership interests in the assets of Fort Morgan Company.

■ The board of directors of Fort Morgan Company authorized the purchase of 850 shares of stock in Jackson Lake Company for $340,000 on November 28, 1930.[7] The directors addressed the question of financing this transaction in the following pertinent language of the authorizing resolution:

> "[A]n assessment of One Hundred Twenty-Five ($125.00) Dollars per share be and is hereby levied on each and all of the shares of the capital stock of this company issued and outstanding, except sixty-eight (68) shares of stock owned and held by the Great Western Sugar Company for special purposes and not for irrigation, said assessment to be payable in five equal annual installments...."

Fort Morgan Company and Jackson Lake Company argue that this resolution evidences an intent to preclude Great Western from using Jackson Lake water. Such conclusion is not warranted. The resolution merely excludes Great Western from any assessment with regard to sixty-eight of its shares of Fort Morgan Company stock. Fort Morgan Company owns shares of stock in Jackson Lake Company for the benefit of all its shareholders, just as it owns other corporate assets in a quasi-fiduciary capacity for the benefit of all its shareholders. *Jacobucci v. District Court,*

*supra.* The means by which Fort Morgan Company chose to finance this stock acquisition, absent evidence to the contrary, did not alter the nature of Great Western's ownership interest in the company's assets.

## IV. INJURY

Great Western asserts that it is entitled to use the sixty-eight shares of stock represented by certificate 806 without regard to possible injury to other Fort Morgan Company shareholders. In effect, Great Western contends that it enjoys a special exception to the normal responsibilities of shareholders in mutual ditch companies. Alternatively, Great Western argues that the water court erred in finding that the contemplated use would cause injury to others. We disagree with both assertions.

■ Ownership of shares of stock in a mutual ditch corporation, unlike ownership of stock in other corporate entities, is merely incidental to the ownership of the water rights. *Jacobucci v. District Court, supra; Beaty v. Board of County Commissioners,* 101 Colo. 346, 73 P.2d 982 (1937); *Comstock v. Olney Springs Drainage District,* 97 Colo. 416, 50 P.2d 531 (1935). Owners of stock in mutual ditch companies possess not only specific interests in water rights, which are real property interests, *Comstock v. Olney Springs Drainage District, supra,* but also specific interests in any ditches, canals, reservoirs or other works by which such water rights are utilized. *Jacobucci v. District Court, supra.* Although mutual ditch company shareholders do enjoy the right to the exclusive use of the water represented by their particular shares, the water itself is considered as being divided *pro rata* according to the number of shares of stock held by each shareholder. *Jacobucci v. District Court, supra.* See also *Kendrick v. Twin Lakes Reservoir Co.,* 58 Colo. 281, 144 P. 884 (1914). Thus, shareholders' rights are in fact conditioned by the amount of water

---

**7.** Fort Morgan Company later purchased an additional 175 shares of Jackson Lake Company stock. No evidence was introduced at trial concerning the events or circumstances surrounding this additional purchase.

available and by the number of shareholders entitled to use such water.

■ Such considerations have led to the recognition that rights of ownership defined by shares of stock in mutual ditch companies are qualified by the principle that a shareholder may not alter established usage of water rights if such alteration would result in injury to other users. *Wadsworth Ditch Co. v. Brown*, 39 Colo. 57, 88 P. 1060 (1907). *See* § 37–92–305(3), C.R.S.1973.[8] This principle ensures the ability of mutual ditch companies to carry out the fundamental purpose that distinguishes them from other forms of corporate endeavor—the spirit of mutual cooperation that is essential to ensure a fair distribution of available water to all interested parties. *Jacobucci v. District Court, supra. See* Moses, *Irrigation Corporations*, 32 Rocky Mtn.L.Rev. 527, 528 (1960).

■ The terms of certificate 806 grant Great Western ownership only of the water rights represented by the sixty-eight shares of Fort Morgan Company stock to which those provisions apply. That ownership interest is equal to no less than—but no more than—Great Western's *pro rata* share of the water rights owned by Fort Morgan Company. Thus, as the water court concluded, Great Western's use of its water rights is limited by the principle that established usage cannot be altered if such alteration would cause injury to other shareholders. *Wadsworth Ditch Co. v. Brown, supra.*

Great Western does not dispute the principle that in general one shareholder may not change the nature of its use of water rights represented by shares of stock in a mutual ditch company in a manner which will cause injury to other such shareholders. It relies on the language of certificate 806 to argue that by agreement with Fort Morgan Company it enjoys a special exemption from such general principle. The sparse language of the certificate is too fragile a foundation upon which to base so significant an exception to the principles of ownership of stock in mutual ditch companies. No document of record evidences consideration of the question of injury to other stockholders occasioned by Great Western's use of its water ·rights, and Great Western has presented no other evidence to support its contention that it is immune from the general qualification of ownership of mutual ditch company stock that a change of use may not be implemented, absent consent, if such change will cause injury to others.

With respect to the question of whether Great Western's proposed use of its water rights would in fact injure other Fort Morgan Company shareholders, a review of the evidence relied upon by the water court in its affirmative answer to that question is in order.

The trial testimony established that after the irrigation season ends, surplus Jackson Lake Company water remains in the reservoir, on the average, every two out of three years. This surplus water is utilized for seepage, evaporation, or carry-over storage, and any such water remaining after November 1st is carried over until the following irrigation season. As previously noted, with one exception, Fort Morgan Company shareholders have used Jackson Lake water since 1930 only to supplement direct flow water rights at times when the requisite minimal flow cannot be maintained in the canal.

■ Great Western's proposed augmentation plans, insofar as they envisioned the use of Jackson Lake water, contain the following significant elements: (1) Great

---

8. Section 37–92–305(3), C.R.S.1973, states:
 "A change of water right or plan for augmentation, including water exchange project, shall be approved if such change or plan will not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right. If it is determined that the proposed change or plan as presented in the application would cause such injurious effect, the referee or the water judge, as the case may be, shall afford the applicant or any person opposed to the application an opportunity to propose terms or conditions which would prevent such injurious effect."

Western would use its *pro rata* share of Jackson Lake water only during the two-week period between the dates October 1 through October 15; (2) Great Western's minimum release requirement during that two-week period would be twenty cubic feet per second; and (3) Great Western would pay any additional expenses incurred as a result of this October release. The water court found that implementation of these proposed augmentation plans would in effect result in the retention in storage of Great Western's *pro rata* share of Jackson Lake water during the irrigation season. The court reasoned that because of the unpredictability of the amount of Jackson Lake water necessary for irrigation, any such proposed retention would result in injury to the remaining shareholders of Fort Morgan Company. These findings are supported by the record, and will not be disturbed on appeal. *Peterson v. Ground Water Commission*, 195 Colo. 508, 579 P.2d 629 (1978).

■ As the water court's opinion recognizes, Great Western's augmentation plans in effect seek to change the use of the Jackson Lake water represented by its Fort Morgan Company stock. The change would be a "change in water right" involving a change in type, place and time of use. *See* § 37–92–103(5), C.R.S.1973. The right of a shareholder of a mutual ditch company to change its water rights is limited by the requirement that such change not injure others who possess vested water rights. Section 37–92–305(3), C.R.S.1973.[9] *See, e.g., Weibert v. Rothe Brothers, Inc.*, 200 Colo. 310, 618 P.2d 1367 (1980); *Wadsworth Ditch Co. v. Brown*, 39 Colo. 57, 88 P. 1060 (1907). An applicant who requests such change has the burden of establishing that injury will not result from the pro-

posed change. *Wadsworth Ditch Co. v. Brown, supra. See also Weibert v. Rothe Brothers, Inc., supra.* We agree with the water court that Great Western's *pro rata* ownership of Jackson Lake water does not permit it to change the use of such water without considering the injury other users might sustain.

## V. PROCEDURAL REQUIREMENTS

■ The water court's opinion contains the following pertinent statements respecting Great Western's claims:

"This is not to say that Great Western cannot use the water represented by its shares in the [Fort Morgan Company] in its plan for augmentation; however, if it desires to do so it must institute a proper proceeding for change of water right upon terms and conditions which will prevent injury to other appropriators.

"Since Great Western has not secured a change of water right, it is entitled to no relief in this case. The Court finds, however, that this action was brought in good faith and [is] not frivolous. That an action such as this would be brought was contemplated by the stipulation of the parties referred to above. Under these circumstances [Fort Morgan Company] is entitled to no damages." (citation omitted)

Great Western asserts that, pursuant to section 37–92–305(3), it is entitled to propose additional terms and conditions to prevent injury to others in the pending augmentation plan proceeding, rather than file some new proceeding. We agree.

Great Western's complaint states in pertinent part that it was filed, *inter alia*, under section 37–92–302, C.R.S.1973,[10] "for

9. *See supra* note 8.

10. Section 37–92–302(1)(a), C.R.S.1973 (1983 Cum.Supp.), provides:

"Any person who desires *a determination of a water right* or a conditional water right and the amount and priority thereof, including a determination that a conditional water right has become a water right by reason of the completion of the appropriation, a determination with respect to a change of a water right,

approval of a plan for augmentation, quadrennial finding of reasonable diligence, or approval of a proposed or existing exchange of water under section 37–80–120 or 37–83–104, or approval to use water outside the state pursuant to section 37–81–101 shall file with the water clerk in quadruplicate a verified application setting forth facts supporting the ruling sought, a copy of which shall be sent

the purpose of obtaining a declaration and determination of Great Western's water right in Jackson Lake arising out of, and by virtue of, its ownership of . . . shares of the capital stock of the [Fort Morgan Company]." The procedural posture of this action is complicated by the stipulation adopted by the water court on August 30, 1979, in the augmentation proceeding which had been initiated by Great Western in 1974.[11] As the water court recognized in another portion of its opinion, Great Western's declaratory judgment action was initiated pursuant to that stipulation. Any decision in this case directly affects the terms and conditions of the decrees entered in the 1974 augmentation proceedings, as the stipulation approved by the court indicates. Hence, this case is in reality part of the 1974 augmentation proceedings.

Those proceedings were subject to the standards contained in section 37–92–305(3), C.R.S.1973, which statute provides in part that if a proposed change of water right or augmentation plan is not approved because of injurious results of such approval, the water court "shall afford the applicant . . . an opportunity to propose terms or conditions which would prevent such injurious effects." Pursuant to that statute, Great Western is entitled to present new terms to the water court in the existing augmentation proceedings to secure a change of use of water rights without injury to others. *See Weibert v. Rothe Brothers*, 200 Colo. 310, 618 P.2d 1367 (1980).

In denying motions by Fort Morgan Company and Jackson Lake Company for dismissal based upon lack of jurisdiction and for change of venue, the water court on April 15, 1980, stated that "this action does constitute a water matter," and that "[t]he relief sought by the complaint herein

would necessarily require one or more changes of water right" as defined by section 37–92–103(5), C.R.S.1973. However, in denying all motions for new trial on October 8, 1982, the water court stated as follows:

"The court views the actions of Great Western as a change of water right. It is recommended that Great Western reopen its augmentation plan or proceed under special statutory proceedings to change the water right to use this water in a plan for augmentation."

The recommendation contained in the water court's October 8, 1982, order suggests that, depending upon the form of the pleadings and the case number under which they were filed, it might not require new proceedings to consider additional proposals by Great Western concerning the use of the water represented by its Fort Morgan Company stock.

■■■ The substance of the relief sought, rather than the form of the pleading, determines whether a particular action is a water matter, subject to the statutory provisions governing such controversies, or some other class of litigation. *See Oliver v. District Court*, 190 Colo. 524, 549 P.2d 770 (1976). Considering the history of the disputes among the parties to this litigation, we conclude that Great Western's case is to be deemed a supplemental phase of the augmentation proceedings initiated by Great Western in 1974. Great Western must be accorded the opportunity of proposing terms and conditions for incorporation in the prior augmentation decrees which would prevent injury to others. *See Weibert v. Rothe Brothers, Inc., supra.* To the extent the water court's order prohibits such procedure, it is reversed.[12]

by the water clerk to the state engineer and the division engineer." (emphasis added)

**11.** The water court observed in its opinion that Great Western's case "arises out of the decrees" entered in the augmentation proceedings, and that the issues presented by Great Western's case "arise from certain of the terms" of the two decrees entered in those proceedings. The consolidation of Great Western's case and Fort Morgan Company's district court action also

contributes to the procedural complications in this matter.

**12.** Further orders of consolidation, as well as additional procedural determinations, may prove beneficial upon remand. The water court must also consider whether an amended resume should be published to give adequate notice to all interested parties in light of the precise issue for determination developed by the proceedings

The order of the water court is affirmed insofar as it determines that Great Western has not forfeited any of its rights to sixty-eight shares of stock in Fort Morgan Company, and that Great Western may not use those sixty-eight shares to claim a direct interest in Jackson Lake storage water to the detriment of others. The order is reversed insofar as it requires Great Western to institute entirely new proceedings, and the case is remanded to that court for further proceedings consistent with this opinion.

on remand. *See* § 37–92–302(3), C.R.S.1973. We express no opinion concerning the effect of this decision, if any, on the substance of the augmentation decrees of March 17, 1978, and June 29, 1978.